ELIZABETH COLTER *vs.* THE TRAVELERS INSURANCE COMPANY.

SAME *vs.* AMERICAN WOOLEN COMPANY.

Suffolk. February 4, 1930. — February 25, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Insurance*, Group. *Contract*, What constitutes, Construction, Performance and breach, Termination, Of employment.

A policy of group life insurance issued to an employer provided that the insurance upon the life of each employee should cease upon the termination of his employment, in which event he should have the right to convert his coverage into an individual policy with the insurance company upon his applying therefor within a month; and that employees temporarily "laid off" should be covered by the group policy for six months, after which their insurance was to be cancelled. A pamphlet distributed by the employer to the employees described the group policy and stated that the insurance was provided to em-

ployees at the sole expense of the employer without contribution by them; that the providing of such insurance did not constitute a contract with them, did not confer any legal rights on them and did not alter their right to leave the employment of the employer at will, nor his right to dismiss them; and that the insurance coverage ceased upon termination of employment. A circular posted on the bulletin board of the employer's premises described the coverage provided for six months in the event of employees being temporarily "laid off." A certain employee, after working for the employer for several years, was "laid off" because of lack of work and continued to be unemployed until the time of his death more than six months later. Without notice to him, his coverage under the policy was cancelled at the end of the period of six months. He did not exercise his privilege of conversion within the month's period. It did not appear that he was induced to continue in the employ of the employer by a proffer of the coverage under the policy as an addition to his wages, nor that he acted or refrained from acting with relation to the employment in reliance on such coverage. His widow brought an action against the insurance company on a certificate which had been issued to him under the policy; and an action against the employer, in which she alleged that he acted with reference to his employment in reliance on the coverage; and that the defendant's termination of such contract without notice to him deprived the plaintiff of her rights under the certificate and deprived him of his privilege of conversion to the damage of the plaintiff. At the trial of the actions together the judge excluded evidence that the employee had stated that he looked on the coverage as protection to the plaintiff and that he continued his employment with the defendant employer by reason thereof; and ordered a verdict for the defendant in each action. *Held*, that

(1) The employee was not entitled to specific notice that his employment had been terminated: the policy of insurance and the certificate issued to him thereunder did not require it; furthermore, he was sufficiently informed in the circumstances of the time when the employment would be terminated and of his right of conversion at that time;

(2) A consideration of all the circumstances, together with the evidence excluded, did not show that the employee had any contract with the employer with reference to the insurance, for breach of which he had any right of action against the employer: the providing of coverage upon his life was entirely gratuitous;

(3) The verdict properly was ordered for the defendant in the action against the employer;

(4) Since the employment had ceased and the coverage upon the employee's life, by the express terms of the policy, had ceased previous to his death, the plaintiff had no rights on the certificate against the insurance company; and the verdict properly was ordered in its favor.

Two actions of contract. Writs dated March 12, 1926.

The first action was upon a certificate of coverage issued to Richard Colter, the plaintiff's husband, under a policy of

group life insurance, as described in the opinion. The first count of the declaration in the second action contained allegations that, as an inducement to said Richard Colter to continue in its employ, the defendant proffered to him the right to participate under the policy of group life insurance; that the defendant represented to him that his employment had not been terminated; that, in reliance thereon and the fact of his being covered, he did not seek work elsewhere and held himself in readiness to perform his work under the contract of employment; and that the defendant terminated such contract without notice to him and thereby deprived the plaintiff of her rights under the insurance policy. The second count contained similar allegations and also an allegation that the defendant's conduct deprived Richard Colter of a valuable conversion privilege given him by the insurance policy and thereby deprived the plaintiff of the benefit which would have accrued to her upon his having availed himself of such privilege.

In the Superior Court, the actions were tried together before *Walsh*, J. The policy and certificate of insurance and material evidence are described in the opinion. At the close of the plaintiff's evidence, the defendant rested. The judge ordered a verdict for the defendant in each action, denying a motion by the plaintiff in each action that a verdict be ordered in her favor. The plaintiff alleged exceptions.

*C. W. Lavers*, for the plaintiff.

*L. C. Doyle*, (*A. E. Bent* with him,) for the defendants.

PIERCE, J. These are two actions of contract brought by the plaintiff as the widow of Richard Colter and the beneficiary named in a certificate issued to him under a group policy of insurance executed as a contract between the defendant The Travelers Insurance Company, hereinafter referred to as the insurer, and the defendant American Woolen Company, hereinafter referred to as the insured, covering with insurance the employees of the latter company, as evidenced by the group policy and the individual certificates issued to each employee. The actions were tried together to a jury. At the close of the examination of the plaintiff's witnesses both parties rested. The plaintiff and

defendants then filed motions for directed verdicts. In both actions the motions of the defendants were allowed by the presiding judge and those of the plaintiff were denied. The plaintiff duly excepted. The actions are before this court on the plaintiff's exceptions to the allowance of the defendants' motions, to the denial of the plaintiff's motions, and to the exclusion of certain evidence during the trial.

The plaintiff introduced in evidence the application of the insured, the policy of insurance issued thereon, the individual certificate referred to in the policy, issued to the insured for delivery to Richard Colter "whose life is insured under this policy . . . setting forth a statement as to the insurance protection to which he is entitled and to whom payable." The plaintiff also introduced in evidence a copy of a pamphlet which was delivered to Richard Colter prior to the issue of the certificate of insurance, which pamphlet was prepared and delivered by the insurer to the insured for the purpose of distributing the same to the insured's employees. This pamphlet, signed by the American Woolen Company and addressed "To Our Employees," described a plan of insurance to become effective after June 16, 1919, and concluded as follows: "This insurance is provided at the expense of the American Woolen Company. No deductions from wages or contributions of any kind by the employees will be required. It does not in any manner take the place of or interfere with the benefits provided by any Workmen's Compensation Laws or any other insurance the employee may have but is in addition thereto. This action is voluntary on the part of the Company and constitutes no contract with any employee and confers no legal rights on him. It does not change his freedom to leave when he pleases, nor our right as employer to dismiss any employee. The insurance ceases, however, upon termination of employment. It is our hope, and we expect, that the plan herein outlined will continue indefinitely, to become a permanent American Woolen Company policy. We must however, and do, reserve the right to discontinue this insurance at any time without

liability to any employee or beneficiary, either or both. Certificates of insurance will be provided for each employee by The Travelers Insurance Company, Hartford, Connecticut, through whom this arrangement is made. With this go our best wishes and our hope that your association with this company may be long continued and mutually beneficial."

It was agreed by counsel as a part of the record that this was a noncontributory plan of insurance; that Colter did not contribute either directly or indirectly by having any part of his compensation retained toward the payment of the premium for this insurance and that the entire cost of the policy was being borne by the American Woolen Company. It was also agreed by the parties that demand was duly made upon the defendants for the payment provided for under the certificate and insurance contract, by the beneficiary, the present plaintiff, after Richard Colter's death, and that payment was refused; and that the insurance payable under the terms of the certificate issued to Richard Colter had accumulated to $1,500, if any was payable.

There was evidence that Richard Colter was an expert carpenter and had worked for the insured for about four and one half years prior to his being laid off. There is no evidence reported in the bill of exceptions as to the terms of his original employment or any testimony that the insured, as an inducement to him to continue in its employment, offered him the certificate of insurance as an addition to his wages, or that he, in reliance upon the plan of insurance and the benefit to accrue to the beneficiary to be nominated by him, acted or refrained from acting in relation to his employment with the insured in a manner different from what he would have acted had the certificate of insurance not been issued.

It was in evidence that Richard Colter, on April 15, 1925, was laid off because the work was slack, that he was taken sick about the middle of November, 1925, and died on December 16, 1925. One of the terms of the policy is as follows: "Termination of Insurance: — The insurance of

each employee covered hereunder shall end when he shall leave the service of the Employer or be dismissed therefrom, but without prejudice to his right to conversion to individual policy form. Subject to the provision for military or naval service, the Employer may elect that an employee who, after having been covered, shall be temporarily laid off, given a leave of absence, or temporarily physically disabled but not dismissed from employment shall be covered during such temporary lay-off, period of leave or of disability, provided that such election shall include all who shall be so laid off, given leave of absence or disabled at the same time and that written notice of such election, with the names of such employees, be given to the Company."

Under the provision of the policy as to coverage of employees temporarily laid off, the insured, in September, 1919, made an election to the effect that they were to be covered for six months after the date they were laid off. There was evidence that this election was communicated to the insurer, and that a circular letter was sent on June 9, 1920, to each paymaster of all mills for posting on his bulletin board. This circular read in part as follows: "Group Life Insurance Employees temporarily laid off after June 16th, 1919 on account of slack work or similar reasons are to be covered even though temporarily in the employment of another employer. This coverage under no condition is to extend for a period of more than six consecutive months. At the end of any such six months' period the names of all employees who have not returned to work should be sent to the insurance company for cancellation in the usual way as of the last day of the six months' period. Should the laid off employees refuse to return to work upon the Company's request, coverage ceases and he is to be reported for cancellation as of the date of request." On the record there is no evidence that any person in charge of insurance matters wrote to or communicated with Richard Colter respecting his lay-off and no notice other than is contained in the policy was given Richard Colter as to his right to convert the group

policy into some other form of insurance. The provision in the certificate of insurance in relation to conversion reads as follows: "Any Employee of the Employer covered under this group policy shall, in case of the termination of employment for any reason whatsoever, be entitled to have issued to him by the Company without evidence of insurability upon application to the Company made within thirty-one days after such termination . . . a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount equal to the amount of his protection under such group insurance policy at the time of such termination."

It was in evidence that cancellation cards, including one which was that of Richard Colter, were received by the insurer on December 28, 1925, and that the insured received credit for the premium from October 15, 1925, until the next July, which was an adjustment of the premium as of the date of cancellation on October 15, 1925. There is no evidence in the record to warrant a finding that Colter on the assumption that his employment was terminated ever made application to the insurer for an insurance policy in any one of the forms customarily issued by the insurer, and no evidence to warrant a finding that he returned to work for the insured within six consecutive months after April 15, 1925, the day of his lay-off, or at any time prior to his death on December 16, 1925.

It is the contention of the plaintiff that the plan of insurance, the policy issued to the insured, and the certificate of insurance to the employee, contain by necessary inference an implied agreement with each employee that he shall be made aware in some unequivocal way of the fact that his employment has been terminated under the group insurance plan, in order that he may have the conversion privilege of receiving at his election a new form of insurance. It is obvious any employee of the insured who paid any attention to the plan of group insurance, as described in the policy issued by the insurer to the insured and in the certificate of insurance issued to each employee of the insured, could not be ignorant of or mistaken as to his

right upon the termination of his employment for any reason whatsoever to convert his certificate of insurance into any one of the forms of insurance issued by the insurer if he should make application for such conversion within thirty-one days after such termination, nor could such an employee fail to know that his right to insurance would be terminated at the expiration of six consecutive months following his temporary lay-off if before the expiration of that period he had not returned to work. The employees were not under the terms of the policy or under the certificate of insurance entitled to notice of the termination of their employment. The policy of insurance by its expressed terms fixed the period which covered the terms of the employee's insurance and in this respect was final. *Beecey* v. *Travelers Ins. Co.* 267 Mass. 135. *Kowalski* v. *Aetna Life Ins. Co.* 266 Mass. 255, 261. *Duval* v. *Metropolitan Life Ins. Co.* 82 N. H. 543, 550. *Meyerson* v. *New Idea Hosiery Co.* 217 Ala. 153. See *Thompson* v. *Pacific Mills*, 141 S. C. 303; 55 Am. L. Rep. 1237, and annotation, 1245.

It is plain that the evidence most favorable to the plaintiff, together with the excluded testimony that Richard Colter "stated that he looked upon the policy of insurance with the defendant as a protection to his wife, and that it was for the reason of the policy that he continued his employment with the defendant," does not directly or inferentially warrant a ruling that Colter had a contract with the American Woolen Company for the breach of which he had a right of action in contract or tort against that company. There was no consideration for the undertaking of the woolen company, and no misrepresentations of fact. Its procurement of insurance for the benefit of its employees and their nominees was purely gratuitous and the employees were so told plainly in the pamphlet quoted *supra.* There is nothing to the contrary in the decision of *Patton* v. *Babson's Statistical Organization, Inc.* 259 Mass. 424. It follows that the present plaintiff, in whatever capacity she may be said to represent her husband, could acquire no rights through her husband which could be

enforced against the American Woolen Company on her husband's death.

The plaintiff as beneficiary had no right under G. L. c. 175, § 125, to maintain an action on the policy or on the certificate of insurance against The Travelers Insurance Company. As has been pointed out, Richard Colter at his death was not an employee of the insured and the term of the policy issued by the insurer had expired by its own limitation period on October 15, 1925.

We find nothing in the exceptions taken to the admission or exclusion of evidence as these exceptions are presented on the brief of the plaintiff which discloses prejudicial harm to the plaintiff. In each case the direction of a verdict for the defendant and the denial of the motion for a directed verdict for the plaintiff were right; and the plaintiff's exception to the allowance of the motion for a directed verdict for the defendant must be overruled. In each case the exceptions are overruled.

*So ordered.*