# Wytheville.

METROPOLITAN LIFE INSURANCE COMPANY V.
EDNA D. HAWKINS.

June 18, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Wellford & Taylor* and *Drewry & Old,* for the plaintiff in error.

*Archer L. Jones,* for the defendant in error.

EPES, J., delivered the opinion of the court.

Edna D. Hawkins instituted her action by a notice of motion for judgment in the Hustings Court of the city of Petersburg against the Metropolitan Life Insurance Company, to recover $1,500.00, which she alleges is due to her as the beneficiary under a group insurance policy issued by the Metropolitan Life Insurance Company to the Virginia Electric and Power Company, insuring the life of her deceased husband, Humie H. Hawkins, and other employees of the Virginia Electric and Power Company.

At the time the group policy was issued, Humie H. Hawkins was an employee of the Virginia Electric and Power Company, and the Metropolitan Life Insurance Company issued to him certificates certifying that the amount of insurance in force on his life under said group policy was the sum of $1,500.00, agreeing that, if he should die while he was the employee of the Virginia Electric and Power Company, it would pay the sum of $1,500.00 to Edna D. Hawkins, as his beneficiary, in accordance with the provisions of the group policy.

The group policy provided that: "Upon termination of active employment, the insurance of any discontinued employee under this policy automatically and immediately terminates, and the company shall be released from any further liability of any kind on account of such person;" and the certificates issued to Humie H. Hawkins were expressly made subject to the terms and conditions of the group policy.

The defense of the Metropolitan Insurance Company was that at the time of his death Humie H. Hawkins had been discharged from, and was not in the employment of, the Virginia Electric and Power Company. The issue raised by this defense was the only issue presented to the jury.

The jury returned a verdict in favor of the plaintiff against the defendant for $1,500.00, which the Metropolitan Life Insurance Company moved the court to set aside because contrary to the law and evidence. The specific ground of the motion was that the evidence was insufficient to sustain a

verdict predicated upon a finding that Humie H. Hawkins was an employee of Virginia Electric and Power Company at the time of his death.

The court overruled this motion and entered judgment for the plaintiff, in accordance with the verdict of the jury, which action of the court the Metropolitan Life Insurance Company assigns as error. There are other assignments of error, but in the view that we take of the case it is unnecessary to consider them.

For some years prior to April 28, 1928, Humie H. Hawkins had been employed by the Virginia Electric and Power Company as a motorman on cars on its Petersburg division. On the afternoon of April 28th, he was assigned to a run on the Blandford line of the company, and took his car out. Late that afternoon he brought his car to the car barn when he should have been out on his run. Fink, the car dispatcher of the company, saw him when he brought his car to the barn; and, being of opinion that he was drunk, relieved him from duty and "told Mr. Hawkins that he did not have any job any longer with the company." Hawkins put the car into the barn and went home, and was not thereafter assigned to any duty by the company. On April 29th and 30th and May 1st and 2nd he stayed about his home, though several times during this period he went out and rode on the street cars of the company. On the morning of May 3rd he committed suicide by drinking carbolic acid on the street, near the car barn of the company, on the steps of which he had been sitting a few minutes before.

The evidence upon which Mrs. Hawkins relies as supporting a finding that at the time he committed suicide Humie H. Hawkins was still an employee of the Virginia Electric and Power Company, is the unquestioned fact that on April 28, 1928, and for a number of years prior thereto, he was in the employment of the company, and the following testimony:

Mrs. Edna D. Hawkins and several other witnesses testified

that for a year or more prior to his death Humie H. Hawkins had suffered from violent headaches, which at times forced him to give up his work and go to bed; that these spells lasted from a few days to as long as two weeks; that on several occasions he had had to ask the company to let him off from work for a while on account of such a spell; but that he had always returned to work as soon as he got well. This testimony is corroborated by the witnesses for the defense.

Mrs. Hawkins further testified as follows: When Hawkins came home to dinner about 1 P. M. on April 28th, he complained of having a headache, for which he took some headache powder, and he ate but little dinner. He left home about 2 P. M. to report back for duty, and soon afterward sent her word by their son that he would be on the Blandford run, and to send him his supper there about 5 o'clock. About 5 o'clock she took him his supper and handed it to him. He was on a Ferndale car, which he was operating, though she had expected to find him on a Blandford car. When she handed him his supper she "did not notice a thing wrong with him. He knew to stop for the sign, and then he took his supper and drove right on." A few minutes after this, Miss Cook asked her if her husband was sick, and told her that she had seen him at the car barn talking with Mr. Fink, and that he (Hawkins) "looked awfully white." When she got home, Hawkins had been there and left his change-carrier and punches and gone out again. She did not see him until he came home about 8 P. M. At this time he was not drunk and "did not seem to have a drop on him," but "he was limp and did not have any use of his hands." He asked her: "What have I done?" To which she replied that she did not know what he had done, but that they told her he had "put the car in the barn this evening." He said: "I did?" But "he did not seem to know anything about it at all." From the night of April 28th to the morning of May 3rd, "he was at home practically all the time, right there in bed." He had in his possession until the time of his

death his badge as a motorman, his punches and book of rules. He was not paid off by the company when he went home on April 28th, but the regular paydays were the fourth and nineteenth of the month. On May 23rd the company paid her what they owed her husband, and at that time she delivered to its representative his badge, punches and book of rules. The company deducted the premiums on his life insurance from his wages, and has not returned to him or to her any portion of the premiums deducted. Dr. Beckwith, the physician for the Virginia Electric and Power Company, who died before this trial, had attended Hawkins at various times when he had these headache spells, and Hawkins had sent for him on Saturday, April 28, 1928.

Much stress is laid by counsel for Mrs. Hawkins upon the answers of Mrs. Hawkins to the following questions as tending to show that at the time of his death Hawkins was still in the employment of the company:

"Q. Did Mr. Hawkins make any statement to you on the day of his death as to his employment?"

"A. Well, that morning when I went off to work I talked with him, and we talked concerning his going to work, and he told me that he was going to work that morning. That was all that was said about his job. Nothing else was said. He was to have gone to work that day.

"Q. Did he at any time, from that Saturday to the time of his death, tell you anything about his being discharged?

"A. No, sir."

Miss Cook testified that she saw Hawkins when he carried his car into the barn on the afternoon of April 28th; that he looked very pale, and she thought he was sick.

Charles L. Hawkins, a brother of Humie H. Hawkins, testified that at least four times between Saturday, April 28th, and May 3rd, he rode with Humie H. Hawkins on cars of the Virginia Electric and Power Company; that at these times Humie H. Hawkins had his badge on the lapel of his coat; that on

these trips the operators in charge of the cars did not indicate in any way that Humie H. Hawkins was not in the employment of the company and did not have a right to ride on the company's cars without paying, nor did they collect any fare from him, and that Humie H. Hawkins did not at any time tell witness that he had been discharged by the company.

Mrs. James Hawkins, the mother of Humie H. Hawkins, testified as follows: On the morning of May 3rd, as she was walking along the street passing the car barn of the Virginia Electric and Power Company, she saw Hawkins sitting on the steps of the car barn. He came to her and spoke to her, and told her that he had "just come from down home;" that he was feeling "as usual," and that he had a headache. He followed her a little way down the street, and then took a bottle of carbolic acid out of his pocket and shook it at her and said: "This will be the last drink I will ever take," and drank the acid. Hawkins did not tell her at this time, or any other time, that he had been discharged.

The foregoing testimony is the evidence, and all the evidence, which the defendant in error contends tends to show that Humie H. Hawkins was at the time of his death in the employment of the Virginia Electric and Power Company.

The insurance company introduced the testimony of A. L. Fink and J. F. Pond, the dispatcher and superintendent of the Petersburg division of the Virginia Electric and Power Company, to show that Hawkins had been discharged, and was not in the employment of the company at the time of his death.

Fink testified to the following effect: On April 28, 1928, Hawkins reported to him about 5:30 and was assigned to duty on the Ferndale line; that he went off duty about 1:15 P. M. and reported back for duty at 2 P. M., when he assigned him to duty on the Blandford line, and told him to go out at 3 o'clock. Hawkins' route on the Blandford run did not take him by the car barn. About 5:40 P. M. he saw Hawkins bringing his car to the car barn with the sign turned "Fern-

dale" instead of "Blandford." Hawkins stopped at the barn and he talked to him. Hawkins was drunk. The reason witness thought Hawkins was drunk was that Hawkins was staggering and he smelled whiskey on his breath; that he brought his car to the barn when he should have been out on the Blandford run; that he did not know what line he was on, and he was crying and did not know where he was. Hawkins asked him not to make a report of it. He had never known Hawkins to be drunk on the job before. He "took Hawkins off the car," and told him "that he did not have any job any longer with the company." He, Fink, did not have the authority to discharge an employee, but he reported the occurrence to Mr. Pond, the superintendent, about 7 P. M., April 28th, and Pond told him to see Hawkins and "have him turn in." He did not see Hawkins again until the following Tuesday, May 1st, when he met him near West End Park, on Chappell street, and told Hawkins that Mr. Pond said for him to go down to the office of the company and "turn in his stuff," and that "he did not have any job." He further testified that after a man is told to "turn in his stuff," the company gives him a reasonable time to do so before issuing orders to its operatives not to honor his badge as a pass on its cars.

J. F. Pond testified that he had authority to dismiss employees of the company; that on April 28, 1928, Fink told him of the condition in which he found Hawkins; that he did not himself see Hawkins, but, acting upon Fink's report, he instructed Fink to dismiss Hawkins from the service of the company, and that he made a report of the discharge of Hawkins to the office of the company in Richmond. He also introduced in evidence a carbon copy of the report made by him to the Richmond office, which reads as follows:

"Petersburg, Va., May 1, 1928.
"To MR. J. H. PENICK,
"FROM MR. J. F. POND.

"Please be advised that Mr. H. H. Hawkins, motorman, was dismissed from the services of the company on April 28, 1928.

"Yours very truly,

"J. F. POND, Supt.

"JFP/sl."

The testimony of the officers of the Virginia Electric and Power Company is clear and positive that Hawkins had been discharged and was not in the employment of the company at the time of his death, and the evidence, even if it be examined under the rules applicable to a demurrer to the evidence, is insufficient to contradict their testimony to this fact, or to warrant the jury in finding that Hawkins was, at the time of his death, in the employment of the company.

The judgment of the trial court will be reversed, and judgment here entered for the plaintiff in error.

*Reversed.*