25463.   CUTLEDGE *v.* ÆTNA LIFE INSURANCE CO.

DECIDED JUNE 11, 1936.

· *J. N. Peacock Jr.,* for plaintiff.
*Leonard Farkas, W. H. Burt,* for defendant.

GUERRY, J.   This is an action by Mittie Cutledge, wife of Thomas R. Cutledge, deceased, upon a certificate of insurance issued to deceased, under a group policy between defendant, Ætna Life Insurance Company, and Flint River Cotton Mills, employer. The certificate was issued on November 20, 1928.   Deceased contributed towards the purchase of this insurance sixty cents per month from November 20, 1928, until August 22, 1935, when his employment with the Flint River Cotton Mills terminated.   He died August 25, 1935.   The certificate issued to the employee recited that:   "Ætna Life Insurance Company of Hartford, Connecticut has insured the lives of certain employees of Flint River Cotton Mills by a group policy of insurance, No. 1120-S, issued and delivered to the employer.   Under and subject to the terms and conditions of said policy, and the application therefor, the life of Tom Cutledge an employee, is insured for the sum of $500 payable in event of death to Mattie Cutledge—wife, beneficiary.   This insurance may be terminated whenever said employee for any reason whatsoever ceases to be in the employ of said employer."   The group policy provided:   "all insurance on the life of any employee shall automatically cease upon termination of employment." The certificate further provided:   "In case of the termination of

the employment for any reason whatsoever the employee shall be entitled to have issued to him by the Ætna Life Insurance Company, without further evidence of insurability and upon written application made to the Insurance Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the company, except term insurance, in an amount equal to the amount of his protection under such group-insurance policy at the time of such termination."

The provisions of the group policy and the certificate issued thereunder should be construed together. *Carruth* v. *Ætna Life Insurance Co.,* 157 *Ga.* 608 (122 S. E. 226); *Metropolitan Life Insurance Co.* v. *Harrod,* 46 *Ga. App.* 127 (166 S. E. 870); *Ætna Life Insurance Co.* v. *Padgett,* 49 *Ga. App.* 666 (176 S. E. 702). So taken, the provisions definitely provide for an automatic cancellation of the certificate of insurance issued to the employee upon the termination of his employment with the Flint River Cotton Mills, employer. Such a provision has often been upheld by the courts. *Curd* v. *Travelers Insurance Co.,* 51 *Ga. App.* 306 (180 S. E. 249); *Joiner* v. *Metropolitan Life Ins. Co.,* 43 *Ga. App.* 1 (157 S. E. 703); *Joiner* v. *Metropolitan Life Ins. Co.,* 40 *Ga. App.* 740 (151 S. E. 540); Douglas *v.* Metropolitan Life Ins. Co. (Mo. App.), 297 S. W. 87; Metropolitan Life Ins. Co. *v.* Hawkins, 156 Va. 720 (158 S. E. 877); Greeley *v.* Ætna Life Ins. Co., 150 Wash. 611 (274 Pac. 106); Kowalski *v.* Ætna Life Ins. Co., 266 Mass. 255 (165 N. E. 476, 63 A. L. R. 1030); Bradley *v.* Prudential Ins. Co., 70 Fed. (2d) 988. The petition in the present case expressly alleges that the employment of insured terminated with the employer three days before his death. Therefore the petition set out no cause of action, unless, as contended by counsel for plaintiff in error, the conversion clause, which we have already set out above in quotations, had the effect of extending the coverage of insurance upon an employee thirty-one days after his cessation of employment, during which time he might apply for an individual policy, without proof of insurability. This argument, however, is not sound, and is not in accordance with the plain provisions of the policy, which pro-

vide that upon termination of employment, the certificate is automatically canceled. While "policies of insurance will be liberally construed in favor of the object to be accomplished, and provisions therein will be strictly construed against the insurer" (*N. Y. L. Ins. Co.* v. *Thompson,* 45 *Ga. App.* 638, 165 S. E. 847; *Ætna Life Ins. Co.* v. *Padgett,* supra, and cit.), "the cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Code of 1933, § 20-702. "Insurance is purely a matter of contract (*North British & Mercantile Ins. Co.* v. *Tye,* 1 *Ga. App.* 380, 58 S. E. 110) ; 'there is no greater sanctity and no more mystery about a contract of insurance than any other.' *Clay* v. *Phœnix Ins. Co.,* 97 *Ga.* 44 (25 S. E. 417). Courts are not called upon, because of the rule that contracts of insurance are to be strictly construed against the insurer, and because the contract itself is one of insurance, to call forth doubt, through construction of plain and unambiguous provisions of such a contract. They should not make hypercritical construction of such contracts. 'The language of the contract should be construed in its entirety, and should receive a reasonable construction, and not be extended beyond what is fairly within its terms. Where the language is unambiguous, and but one reasonable construction of the contract is possible, the court must expound it as made.' *N. Y. Life Ins. Co.* v. *Thompson,* supra and citations." *Ætna Life Ins. Co.* v. *Padgett,* supra. It is plain that the underlying basis and principle of the certificate of insurance sued upon was his employment by the Flint River Cotton Mills. He accumulated no vested right in the certificate, except the mere privilege, upon termination of employment for any reason, of application for individual certificate without proof of insurability. When his employment ended he was not entitled to any notice by the insurer that his certificate was canceled. Beecey *v.* Traveler's Ins. Co., 267 Mass. 135 (166 N. E. 571) ; Colter *v.* Traveler's Ins. Co., 270 Mass. 424 (170 N. E. 407) ; Thull *v.* Equitable Life Assurance Soc., 40 Ohio App. 486 (178 N. E. 850) ; Roehrig *v.* Mo. St. L. Ins. Co., 251 Ill. App. 434. In Ætna Life Ins. Co. *v.* Catchings, 75 Fed. (2d) 628, the court had under consideration a contract similar to that presented

in the case at bar. Catchings was discharged on June 15, 1931, and died July 7, 1931 without ever having made application for an individual certificate under the conversion clause. The court said: "As appears from a memorandum in the record, the district court was of the opinion that the provision permitting the insured to apply for and receive a converted policy within thirty-one days kept the original insurance in force for that period. . . The privilege of conversion gave the insured the right to have a new policy issued to him within thirty-one days after the termination of the insurance under the group policy without submitting evidence of insurability, but did not automatically extend the insurance that had been properly canceled. In order to take advantage of the clause, it was necessary for Catchings to select the form of policy he wanted, make written application for it, and pay the first premium in advance, none of which he did. We find no provision in the policy that could be construed as automatically extending it for thirty-one days to allow the employee to make up his mind as to whether he wanted a converted policy." In Ætna Life Ins. Co. v. Carroll, 188 Ark. 154 (65 S. W. (2d) 25), the Supreme Court of Arkansas, considering a similar policy said: "It is also argued that the conversion privilege ran for thirty-one days, and, since his death occurred on June 18, he had until July 1, to exercise said right. The right of conversion, however, presupposes a termination of the employment. The very beginning of said conversion-privilege clause is: 'Upon termination of employment with employer, the company will, if desired, issue to the insured . . a policy . . on the following conditions.' It is true the insured has thirty-one days in which to exercise the right of conversion, but during the time he neglects to do so, he is not insured, and, if he dies without having exercised the option, his beneficiary can not recover. It all goes back to the same proposition that he must be in the employ of the employer." The cases of Fearon v. Metropolitan Life Ins. Co., 138 Misc. 710 (246 N. Y. Supp. 701); Chrosniak v. Metropolitan Life Ins. Co., 125 Misc. 453 (201 N. Y. Supp. 211); Baker v. Prudential Ins. Co., 279 Ill. App. 5, are all to the same effect. If it had been the intention of the parties to extend the coverage of insurance during the thirty-one days in which the insured might apply for an individual certificate, such language as is commonly used with reference to grace period of

thirty-one days for payment of premiums that, during such time "the policy will remain in full force and effect," could have been easily employed. As the contract stands, it is apparent that upon termination of employment, the insurance coverage ceased. The case of *Veal* v. *Security Mutual Life Ins. Co.*, 6 *Ga. App.* 721 (65 S. E. 714), is not authority contrary to our ruling. In that case the policy was an ordinary life contract with an accumulating cash value. There the contract was one for life with certain vested rights; here the contract existed only during employment and in which insured had no vested rights. The ruling made in that case could under no stretch of imagination be held to apply to a contract of the character now under consideration. The court did not err in dismissing the petition upon demurrer.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*