ETHEL ADKINS

*v.*

AETNA LIFE INSURANCE COMPANY

(No. 9898)

Submitted April 23, 1947. Decided June 24, 1947.

*Fitzpatrick, Strickling & Marshall,* for plaintiff in error.

*W. W. Smith,* for defendant in error.

HAYMOND, JUDGE:

On this writ of error the defendant, Aetna Life Insurance Company, seeks reversal of a judgment against it for $1,000.00 in favor of the plaintiff, Ethel Adkins, rendered by the Circuit Court of Cabell County upon the verdict of a jury in that amount.

The action is based upon a group policy of insurance on the life of Roy E. Adkins, the husband of the plaintiff, in the amount of $1,000.00. This policy, dated January 12, 1942, and in which the plaintiff was the named beneficiary, was issued by the defendant and delivered to Smoot Advertising Company. Roy E. Adkins became an employee of the advertising company in April, 1941. Under the policy a certificate dated December 17, 1941, was issued by the insurance company. The certificate provides that the company has insured the life of Roy E. Adkins, an employee of the advertising company, subject to the terms and conditions of the policy; that in the event of his death the sum insured would be paid to Ethel Adkins, the beneficiary; and that the continuance of the insurance is subject to the payment by the employer of the premiums when due. It also refers to certain provisions of the policy which are described on the reverse side of the certificate.

Roy E. Adkins, who was a painter by trade, died from a sudden two day illness on April 26, 1942, while working for Badger and Sons Company, a different concern from Smoot Advertising Company. The defendant insurance company having denied liability on the ground that Roy E. Adkins was not an employee of Smoot Advertising Company at and prior to the time of his death, the plaintiff instituted this action on July 8, 1944. The declaration, following the statutory form, filed a copy of the policy and a copy of the certificate. The defendant filed its plea of the general issue and its specification of defenses. To this specification of defenses the plaintiff filed a replication and an amplified replication. Upon the issues raised by these pleadings the case was tried before a jury. At

the conclusion of the evidence the defendant moved the court to direct a verdict in its favor. This the trial court declined to do and, over objection and exception of the defendant, submitted the case to the jury. The jury returned a verdict in favor of the plaintiff for $1,000.00, upon which the court entered the judgment which the defendant assails in this Court.

The policy issued by the defendant to the Smoot Advertising Company, the employer of Roy E. Adkins at the time it was issued, constitutes the contract of insurance. Both the policy and the certificate issued to the insured by the company contain certain identical provisions which are material to the decision of the case. One of these provisions is that: "In the event of the termination of the insured's employment with the employer, the insurance under this policy shall automatically cease, * * * at the end of the policy month in which employment terminates." This provision, the defendant insists, applies to the undisputed facts in this case. The other of these provisions relates to a privilege for the benefit of the insured to convert the policy into a new contract of insurance. This provision is, in effect, that upon termination of his employment with the employer, the company will, if desired, issue to the insured, without further evidence of insurability, upon his written application to the company and his payment, within thirty-one days after cessation of the insurance, of the first premium applicable to the class of risk to which he belongs and to the form and the amount of the insurance at his then attained age, a new policy of life insurance, in any one of the nonparticipating forms customarily issued by the company, except term insurance, in an amount not to exceed that of the terminated insurance under the original policy.

The policy contains these additional pertinent provisions: That the company will pay the sum insured to the beneficiary upon surrender of the policy and due proof of the death of the insured during the continuance of the insurance; that the agreement is made in consideration of

a premium to be paid by the employer for insurance for one month from the date of the policy and of the payment of renewal premiums for subsequent insurance; and that the policy may be continued at the expiration of the first premium period and monthly thereafter, but only while the insured remains in the employ of the employer, upon payment by the employer of the required premium at the beginning of each monthly period. The policy also provides that if any premium is not paid when due, the policy shall cease, except that a grace period of thirty-one days, during which the policy shall remain in force, is allowed for the payment of any premium after the first premium. The plaintiff contends that the foregoing provisions with respect to the conversion privilege given the insured and the period of grace of thirty-one days allowed for the payment of any insurance which has become due kept the insurance under the policy in effect at the time of the death of the insured on April 26, 1942.

The question of controlling importance is whether, under the facts disclosed by the evidence, the employment of the insured by his employer, Smoot Advertising Company, had terminated and, if so, by reason of the termination of his employment, the insurance under the policy had ceased before his death. It is not controverted that the death of the insured occurred on April 26, 1942, after a sudden and short illness, or that the last policy month for which any premium was paid by the employer ended on April 12, 1942.

The testimony introduced on behalf of the plaintiff was that the insured, Roy E. Adkins, worked for Smoot Advertising Company in and about the City of Huntington, where his employer maintained a branch office, from some time in April, 1941, until April 2, 1942. Upon occasions, when weather conditions prevented outside activities in which his employer was engaged, he worked for short intervals of several days for other concerns which used and paid him for his services as a painter. During the times he worked in this manner there was no formal termination

of his employment with Smoot Advertising Company, and it continued to pay his insurance premiums and to keep his name on its pay roll lists. After he ceased to do any work for Smoot Advertising Company, on April 2, 1942, he kept the keys to its garage and automobile truck which he had used in connection with his work for that company, and his wife, the plaintiff, had the keys in her possession at the time of the trial of this case. No notice was given the insured of any termination of his employment and he never indicated to the plaintiff by any act, other than his acceptance of employment with Badger and Sons Company, that he considered his employment with Smoot Advertising Company as having been terminated. The work which he performed for Badger and Sons Company, which consisted of painting, was done in Point Pleasant, in Mason County, from which place he returned each day from his work to his home in Huntington. The wages of the insured for the last work performed by him for Smoot Advertising Company were paid by it on April 3, 1942, to his daughter who called for the money which she received for the insured while he was at work for Badger and Sons Company at Point Pleasant. All prior wage payments to the insured had been called for by him and paid to him personally by Smoot Advertising Company.

The evidence produced by the defendant shows that a few days before the insured went to work at Point Pleasant for Badger and Sons Company he had a conversation with the local manager for Smoot Advertising Company in which he told the manager that he could receive a higher rate of pay for his work at Point Pleasant than he was receiving from Smoot Advertising Company at the time. The manager told the insured that his company could not increase his rate of pay or pay the wages which the insured would be paid for working for Badger and Sons Company and advised him to accept the proposed new employment. This the insured indicated to the manager he intended to do. Following this conversation the insured did go to work for Badger and Sons Company and he worked without interruption for that company un-

til he was stricken with his fatal illness, while so engaged, two days before his death on April 26, 1942. The manager regarded the action of the insured in accepting employment with Badger and Sons Company as a termination of his employment with Smoot Advertising Company. He testified that when the insured quit work for that company, which he did on April 1, 1942, the insured stated that he was leaving to go with Badger and Sons Company. He further testified that there was no arrangement between him and the insured by which he was to return to the employment of Smoot Advertising Company.

The final premium payment for the insurance, which had been made before the insured started to work for Badger and Sons Company, was for the policy month which ended on April 12, 1942. No premium for any subsequent policy month was paid to the insurer by Smoot Advertising Company. The local manager also stated that he assumed that, inasmuch as the insured was going to Badger and Sons Company at higher wages, he would not return to Smoot Advertising Company; that he did not tell him that his job would remain open for him if he came back; and that he did not expect the insured to return to work for his company. He did say, however, that he probably would have taken him back later if there had been work for him. On April 10, 1942, the manager of the Huntington office of Smoot Advertising Company notified its main office in Parkersburg that Adkins had terminated his employment with the company. This notice was in turn sent from the main office to the general agent in West Virginia of the defendant company at Huntington, where the policy was canceled on April 13, 1942, and the notice was then forwarded to the home office of the defendant in Hartford, Connecticut.

During the period February 26, 1942, to April 2, 1942, several days of which the insured worked temporarily for two other local concerns, the wages paid to him by Smoot Advertising Company totaled only $61.75 as compared to the work he performed for Badger and Sons Company,

from April 2, 1942, until he became ill two days before his death on April 26, 1942, for which work his earnings were $213.29.

The errors assigned by the defendant are: (1) The refusal of the trial court to sustain its motion to direct the jury to return a verdict in its favor; and (2) the action of the trial court in giving to the jury, at the instance of the plaintiff, two instructions, one of which submitted to the jury the questions whether the employment of the insured had ceased and the insurance was in effect at the time of his death, and the other of which told the jury that the amount of the verdict should be the sum of $1,-000.00, if the jury found for the plaintiff.

As heretofore indicated, the decisive question is whether, under the evidence, there was termination of the employment of the insured with Smoot Advertising Company which automatically put an end to his insurance within the provisions of the policy. If his employment had ended and his insurance had ceased prior to his death, the assignment relating to the instructions given by the trial court becomes unimportant.

There is no conflict in any material part of the evidence as to the relation between the insured and Smoot Advertising Company from April 2, 1942, when he voluntarily quit his work with that company, until his death on April 26, 1942. The plaintiff and the other witnesses who testified in her behalf on that point admit that he went to work for another employer on April 2, 1942, and that he never afterwards worked for the advertising company. No witness for the plaintiff testifies that his employment with that company continued after April 1, 1942, the last day he worked for it, or to any facts from which it could be reasonably inferred that the insured considered himself as an employee of Smoot Advertising Company during that time or that he intended to return to his former work. His prior periods of temporary employment with other concerns were, at the time they occurred, recognized as such by both the insured and his employer. They were

engaged in by the insured with at least a tacit understanding between him and his employer that he would return to his work, which he always did. In those periods he worked for other concerns in Huntington. These circumstances did not exist after April 1, 1942, which was the last day he worked for Smoot Advertising Company. On the following day he left his work with that company to take employment with another employer in territory located at a considerable distance from the Huntington community. He left after discussing the matter with the local manager of his employer, while endeavoring to make up his mind to accept other employment in a different community at substantially higher wages where he could, and did, in approximately twenty-four days, earn $213.29, more than three times the sum of $61.75 received by him during the last five weeks of his former employment.

When he went to work for Badger and Sons Company at Point Pleasant he discontinued his contacts with Smoot Advertising Company, even to the extent of sending his daughter to obtain his final payment of wages, instead of calling in person, as formerly, for that purpose. None of these facts is controverted or denied. The local manager of Smoot Advertising Company testified positively that the insured told him before he quit working for that company that he was leaving the company and going with Badger and Sons Company. This witness also stated that there was no arrangement made at that time by which the insured was to return to the employment of Smoot Advertising Company. This testimony is not denied, and is the only direct testimony in this case on that point. The insured never did return or indicate any desire or intention to return, and he continued his work with Badger and Sons Company, away from Huntington, until his final illness put an end to his new employment. It is obvious that when Roy E. Adkins started to work for Badger and Sons Company, after considering and deliberating the step he actually decided to take, he intended to enter, and he did enter, a new employment of permanent or indefinite duration and that in so acting he finally

terminated his employment with Smoot Advertising Company. No other inference or conclusion can reasonably be drawn from the undisputed facts.

The employment relation between the insured and Smoot Advertising Company was one of indefinite duration which could be terminated by either of them at any time. Generally when an employee voluntarily quits his employment, with or without justification, the contract of employment is terminated. *Resener v. Watts, Ritter & Company*, 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629. See 39 C. J., 78; 35 Am. Jur., Master and Servant, Section 20.

When the facts are not in dispute and they lead all reasonable minds to the same conclusion, the question in issue becomes one of law for the court. *Huminsky v. Gary National Bank*, 107 W. Va. 658, 150 S. E. 9. See *Douglas v. Metropolitan Life Ins. Co.* (Kansas City Court of Appeals), 297 S. W. 87; 64 C. J., pages 338 to 341; 54 Am. Jur., Trial, Section 157. This Court has held, in many cases which involved the questions of negligence and contributory negligence, that when the evidence is not conflicting and only one inference may be drawn by reasonable minds from undisputed facts, those questions are questions of law for the court. As to negligence, a few of these cases are: *Cooper v. Pritchard Motor Co.*, 128 W. Va. 312, 36 S. E. 2d 405; *Wood v. Shrewsbury*, 117 W. Va. 569, 186 S. E. 294; *Barron v. Baltimore & Ohio Railroad Co.*, 116 W. Va. 21, 178 S. E. 277; *Linville v. Chesapeake & Ohio Railway Co.*, 115 W. Va. 610, 177 S. E. 538; *Craft v. Fordson Coal Co.*, 114 W. Va. 295, 171 S. E. 886; *Daniels v. Chesapeake & Ohio Railway Co.*, 94 W. Va. 56, 117 S. E. 695; *Reilly v. Nicoll*, 72 W. Va. 189, 77 S. E. 897, 47 L. R. A. (N. S.) 1199; *Ketterman v. Dry Fork Railroad Co.*, 48 W. Va. 606, 37 S. E. 683. As to contributory negligence some of these cases are: *Gilkerson v. Baltimore & Ohio Railroad Co.*, 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke v. Welker*, 128 W. Va. 299, 36 S. E. 2d 410; *Jackson v. Chesapeake & Ohio Railway Co.*, 110 W. Va. 568, 159 S. E. 517; *Boggess v. Public Service Company*,

107 W. Va. 88, 147 S. E. 480; *McLeod* v. *Charleston Laundry Co.,* 106 W. Va. 361, 145 S. E. 756; *Krodel* v. *Baltimore & Ohio Railroad Co.,* 99 W. Va. 374, 128 S. E. 824; *Cavendish* v. *Chesapeake & Ohio Railway Co.,* 95 W. Va. 490, 121 S. E. 498. This principle is applicable to the question of the termination of the employment of the insured with Smoot Advertising Company.

Another well established rule also applies to the situation presented by the evidence in this case. That rule is that when the evidence embraces undisputed facts and circumstances which cause the case to turn in favor of one of the parties so that a verdict adverse to such party could not stand, the court should direct a verdict in his favor. *Norvell* v. *Kanawha and Michigan Railway Co.,* 67 W. Va. 467, 68 S. E. 288, 29 L. R. A. (N. S.) 325; see *Smith* v. *Abbott,* 106 W. Va. 119, 145 S. E. 596; *Summit Coal Co.* v. *Raleigh Smokeless Fuel Co.,* 99 W. Va. 11, 128 S. E. 298; *Hicks* v. *New River & Pocahontas Consolidated Coal Co.,* 95 W. Va. 17, 120 S. E. 898. There was no disputed question of fact to be determined by the jury, and the court should have sustained the motion of the defendant for a directed verdict. See *England* v. *Aetna Life Ins. Co.,* 285 Mich. 302, 280 N. W. 771.

As the uncontradicted evidence shows that the insured had terminated his employment with Smoot Advertising Company on April 2, 1942, his insurance, under the terms of the policy, automatically ceased at the end of the policy month in which his employment terminated. This occurred on April 12, 1942. The clear and unambiguous provision of the policy, and of the certificate, dealing with the termination of the insurance, expressly so provides. Effect must be given to the provision, if it is valid, unless other provisions of the contract of insurance read in connection with it, or the language of the contract considered as a whole, warrant or impel a contrary conclusion.

Though the particular clause of this contract of group insurance, in both the policy and the certificate, which provides that, upon the termination of the employment of

the insured with his employer, the insurance under the policy shall automatically cease at the end of the policy month in which employment terminates, except as provided in a paragraph which entitles the beneficiary, upon stated conditions, to the payment of specified extended insurance, has not been considered or passed upon by this Court in any prior decision, this type of clause has been reviewed in numerous cases by the Federal Courts and the appellate courts in many of the States of the Union. The decisions of those courts are uniformly in favor of its validity and binding effect. *Magee* v. *Equitable Life Assurance Society of United States,* 62 N. D. 614, 244 N. W. 518; 85 A. L. R. 1457; *Duval* v. *Metropolitan Life Ins. Co.,* 82 N. H. 543, 136 A. 400, 50 A. L. R. 1276; *Szymanski* v. *John Hancock Mutual Life Ins. Co.,* 304 Mich. 483, 8 N. W. 2d 146, 145 A. L. R. 947; *English* v. *Metropolitan Life Ins. Co.,* 300 Mass. 482, 15 N. E. 2d 804; *Equitable Life Assurance Society of United States* v. *Yates,* 288 Ky. 309, 156 S. W. 2d 128; *Schooley* v. *Metropolitan Life Ins. Co.* (Court of Civil Appeals of Texas), 77 S. W. 2d 886; *Aetna Life Ins. Co.* v. *Carroll,* 188 Ark. 154, 65 S. W. 2d 25; *Pearson* v. *Equitable Life Assurance Society of United States,* 212 N. D. 731, 194 S. E. 661; *Metropolitan Life Insurance Co.* v. *Hawkins,* 156 Va. 720, 158 S. E. 877; *Southern Life Ins. Co.* v. *Cobb,* 71 Ga. App. 581, 31 S. E. 2d 607; *Cutledge* v. *Aetna Life Ins. Co.,* 53 Ga. App. 473, 186 S. E. 208; *Colter* v. *Travelers Ins. Co.,* 270 Mass. 424, 170 N. E. 407; *Greeley* v. *Aetna Life Ins. Co.,* 150 Wash. 611, 274 P. 106; *Gregory* v. *Travelers Ins. Co.,* 223 N. C. 124, 25 S. E. 2d 398, 147 A. L. R. 283; *Bradley* v. *Prudential Life Ins. Co.* (C. C. A. 9th), 70 Fed. 2d 988; *Aetna Life Ins. Co.* v. *Catchings* (C. C. A. 5th), 75 Fed. 2d 628. The extended insurance provision of the policy, referred to in the foregoing termination of insurance clause, does not apply to the situation disclosed by the evidence. The conditions necessary to make it effective were not satisfied by the insured, and the claim of the plaintiff is not for extended insurance benefits but for the face amount of the policy. Consequently the provision which deals with extended insurance benefits, not being material

to the decision of this case, need not be further considered or discussed.

Group insurance may be characterized as the coverage of a number of individual persons by one comprehensive policy of insurance. 44 C. J. S., Insurance, Section 15. Usually the primary purpose to be accomplished by the group type of insurance is to protect and provide for employees, and when the insured ceases to be an employee, the reason for resorting to that kind of insurance loses its force. In the absence of any statutory provision to the contrary, the defendant had the right to incorporate the clause in the policy and in the certificate, and the employer was at complete liberty to refuse or to accept a contract which contained the clause as one of the terms and conditions required by the insurer in providing insurance for an employee. The benefit of the policy was in the nature of a gratuity to the insured. He was not required to pay, and he did not pay, any part of the premiums for the insurance furnished. They were paid by the employer as required by the terms of the policy. Viewed as a business transaction, there is no justification for an employer to continue the payment of premiums to maintain group insurance for a person insured as an employee whose employment has ended.

By voluntarily accepting the contract the insured and his employer and his beneficiary became subject to its valid provisions. The group policy is the contract of insurance in this case. *Watts* v. *Equitable Life Assurance Society of United States,* 125 W. Va. 209, 23 S. E. 2d 923. It differs from the ordinary life insurance contract in that it is entered into between the insurer and the employer of the insured employee, rather than between the insurer and the insured as is usual in other contracts of insurance. It is in the nature of a quadrilateral undertaking which affects and applies to the insurer, the employer, the insured, and the beneficiary. A contract of life insurance, of which the contract here in suit is a comparatively recent and a somewhat distinct and peculiar type, will be construed and applied, as any other contract, in accordance

with the plain meaning of the terms employed by the parties to it. *Iannarelli* v. *Kansas City Life Insurance Company,* 114 W. Va. 88, 171 S. E. 748; *DaCorte* v. *New York Life Insurance Co.,* 114 W. Va. 172, 171 S. E. 248; *Haddad* v. *John Hancock Mutual Life Ins. Co.,* 117 W. Va. 749, 188 S. E. 131.

The clause providing for the cessation of the insurance at the end of the policy month during which the employment of the insured terminates, is clear and unambiguous. There is no necessity to construe it. Its meaning is plain. It operated to terminate the insurance provided by the contract at the end of the policy month, during which the employment of the insured ceased, on April 12, 1942, which was fourteen days before his death. It must be applied in the manner required to effectuate its clear and manifest purpose.

To sustain the judgment of the trial court in her favor, the plaintiff points to another provision of the insurance contract which, notwithstanding the foregoing termination of insurance clause, she contends, operates to continue the insurance in force and effect until the death of the insured. Her contention is that the coverage of the policy was so extended by the conversion clause in the policy, which provides that upon termination of the employment of the insured with his employer, the insurer will, if desired, issue to the insured, without further evidence of insurability, a policy of life insurance upon four stated conditions. Those conditions are that written application for such policy and payment of the first premium must be made by the insured within thirty-one days after the cessation of the insurance under the original policy; that the amount of the new policy shall not exceed the amount of insurance terminated under the original policy; that the new policy shall be upon any one of the nonparticipating forms customarily issued by the insurer, except term insurance; and that the new policy shall require payment of the premium applicable to the class of risk to which the insured belongs and to the form and the amount of the new policy at the then attained age of the insured.

The plaintiff does not assert, or attempt to show by any evidence whatsoever, that any of the conditions required for the issuance of a new policy was complied with by the insured at any time before his death on April 26, 1942, which occurred within the thirty-one day period. The absence of any such evidence clearly indicates that the insured had no such intention and that he did nothing to make effective that provision of the policy. In fact, the assertion that his employment with his employer had not terminated and his insurance had not ended at the time of his death is wholly inconsistent with any claim that he desired to obtain a converted policy of insurance. But even if he had exercised the privilege afforded him by that provision of the policy and had received the new policy to which he would have been entitled, that course of action would not have kept alive and effective his insurance under the original policy.

The effect of the conversion clause of the policy was merely to confer upon the insured the right or the privilege of obtaining a new policy in place of the policy under which his insurance had ceased by reason of the prior termination of his employment. The clause did not operate to extend for thirty-one days, or for any period of time, the insurance provided by the original policy. Though there are some decisions to the contrary, among which may be mentioned the cases of *Emerick* v. *Connecticut General Life Insurance Co.,* 120 Conn. 60, 179 A. 335, 105 A. L. R. 413, and *Shanks* v. *Travelers' Insurance Co.,* U. S. District Court, N. D., Oklahoma, 25 Fed. Supp. 740, it is generally held that a conversion privilege clause in a group insurance policy of the character embodied in the policy issued by the defendant, provides a specified period after the insured has terminated his employment, in which to exercise his right of conversion; that it does not automatically extend, during that period, the insurance which ceased upon the termination of his employment; and that if the insured dies during the time, without having exercised his privilege of conversion, he is not insured under the policy and his beneficiary can not recover. In order

to keep in force the insurance provided by the policy it is essential that he continue his employment with the employer to whom the policy was issued. *Aetna Life Ins. Co. v. Catchings* (C. C. A. 5th), 75 F. 2d 628; *Kowalski* v. *Aetna Life Ins. Co.*, 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030; *Fearon* v. *Metropolitan Life Ins. Co.*, 138 Misc. 710, 246 N. Y. S. 701; *Young* v. *General American Life Ins. Co.* (Ohio App.), 41 N. E. 2d 895; *Missouri State Life Ins. Co.* v. *Hinkle,* 18 Tenn. App. 228, 74 S. W. 2d 1082.

The effect given to the conversion clause in the foregoing cases is sound in principle and leads to the correct result. The provision of the policy which conferred upon the insured the right to obtain a converted policy if he had applied for it in writing within thirty-one days after the termination of his insurance under the present policy did not extend his insurance beyond April 12, 1942, the end of the policy month during which his employment with his employer, Smoot Advertising Company, came to an end. .

The clause in the policy which provides "a grace period of thirty-one days during which time the policy shall remain in force" for the payment of any premium after the first premium merits consideration. It is argued that as the insured died within thirty-one days after the termination of his employment, the provision just referred to had the effect of continuing the insurance in force for that period of time. This position is not tenable. The grace period, provided by the policy, is for the benefit of the employer who, by the express terms of the policy, was required to pay the premiums. No obligation of that nature is imposed upon the insured. In this respect the group policy of insurance is different from the ordinary life insurance policy. The effect of the grace period provision of the group policy issued by the defendant is to protect the insured if his employment continues with his employer during that period, but not to afford him protection if the insurance has ceased because of the termination of his employment. The clause does not operate to continue the policy in force when, by its express terms, the insurance

which it provides has ceased and determined. This view is in accord with the holdings of appellate courts in several jurisdictions. *Szymanski* v. *John Hancock Mutual Life Ins. Co.,* 304 Mich. 483, 8 N. W. 2d 146, 145 A. L. R. 947 *England* v. *Aetna Life Ins. Co.,* 285 Mich. 302, 280 N. W. 771; *Baker* v. *Prudential Ins. Co.,* 279 Ill. App. 5; *Lewis* v. *Connecticut General Life Ins. Co.* (Court of Civil Appeals of Texas), 94 S. W. 2d 499; *Schooley* v. *Metropolitan Life Ins. Co.* (Court of Civil Appeals of Texas), 77 S. W. 2d 886; *Aetna Life Ins. Co.* v. *Carroll,* 188 Ark. 154, 65 S. W. 2d 25; *Southern Life Ins. Co.* v. *Cobb,* 71 Ga. App. 584, 31 S. E. 2d 607. Cases to the contrary, however, are: *Powell* v. *Equitable Life Assurance Society,* 173 S. C. 50, 174 S. E. 649, and *Equitable Life Assurance Society* v. *Hoover,* 187 Okla. 134, 101 P. 2d 632.

The plaintiff insists that notice to the insured of the termination of his employment was required of the employer to terminate his insurance within the period of thirty-one days after his employment had ended during which the insured had the right to apply for a converted policy of insurance. There is no merit in this contention. The policy does not require such notice by either the employer or the insurer. In the absence of a provision for notice by the employer or the insurer to the insured of the termination of his employment, to impose such duty would in effect be to incorporate in the contract an obligation which was not assumed by the parties to the contract when it was entered into between them. Courts may not alter or rewrite the contracts of the parties, or insert provisions which the parties themselves have not seen fit to adopt. No notice was necessary to inform the insured that he had terminated his employment with Smoot Advertising Company. After at least some deliberation, and for the purpose of obtaining higher wages, the insured, with the consent of the representative of his employer, voluntarily terminated his employment and went to work for another. To require that he be given notice of a situation of which he was already fully aware, and as to which he possessed equal or even greater knowledge than did

his employer, could serve no useful end or purpose. Such an act would, in the circumstances of this case, be a futile gesture. It would signify nothing and neither add to nor subtract from any right or benefit of the insured.

As the conversion privilege clause of the policy, for the reasons already stated, gave the insured nothing more than the right to obtain a converted policy upon stated conditions within the specified period after the termination of his employment and did not extend his insurance under the policy beyond the end of the policy month in which his employment terminated, no notice by his employer that his employment had terminated could restore his insurance under the policy or serve to keep it in force or effect. *Pearson* v. *Equitable Life Assurance Society of United States*, 212 N. C. 731, 194 S. E. 661; *Duval* v. *Metropolitan Life Ins. Co.*, 82 N. H. 543, 136 A. 400, 50 A. L. R. 1276; *Murphy* v. *Chrysler Corporation*, 306 Mich. 610, 11 N. W. 2d 261; *Metropolitan Life Ins. Co.* v. *Hawkins*, 156 Va. 720, 158 S. E. 877; *Costelle* v. *Metropolitan Life Ins. Co.* (Springfield Court of Appeals, Mo.), 164 S. W. 2d 75; *Equitable Life Assurance Society of United States* v. *Yates*, 288 Ky. 309, 156 S. W. 2d 128; *English* v. *Metropolitan Life Ins. Co.*, 300 Mass. 482, 15 N. E. 2d 804; *Kowalski* v. *Aetna Life Ins. Co.*, 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030.

For the reasons stated, and because of the errors which occurred upon the trial and which have been referred to and discussed, the judgment of the Circuit Court of Cabell County is reversed, the verdict of the jury is set aside, and a new trial is awarded the defendant.

*Reversed and remanded.*