VanZANTEN *v.* NATIONAL CASUALTY COMPANY.

1. Insurance—Construction of Policy—Ambiguity.
   An ambiguity in an insurance policy will be resolved in favor of the insured.

2. Same—Construction of Insurance Policy.
   That construction of an insurance policy most favorable to the insured will be adopted by the court, where there are 2 different constructions that might be adopted by reasonably informed men.

3. Same—Group Accident and Health Policy—Specific Loss—Expense for Hospitals, Physicians and Medicines.
   Provision in specific loss section of group accident and health protection insurance policy setting forth that losses payable thereunder should be in addition to the benefits provided for in sections of the policy pertaining to payment of expenses in hospitals and for physicians and medicines was designed to clarify the rights of the insured rather than to limit the liability of the insurer, hence, insurer could be held liable to an insured under all 3 groups of provisions.

---

References for Points in Headnotes
[1, 2] 29 Am Jur, Insurance § 166.
[6–8] 29 Am Jur, Insurance §§ 222, 930.

4. SAME—GROUP ACCIDENT AND HEALTH POLICY—SPECIFIC LOSS—WEEKLY PAYMENTS FOR DISABILITY.

Insured was entitled to payment for specific loss of foot under group accident and health policy and for weekly total disability payments during period covered by policy up until termination of policy as to insured.

5. SAME—GROUP ACCIDENT AND HEALTH POLICY—DISABILITY—HOSPITAL EXPENSES.

Liability for insurer's payment for disability benefits and hospital expense under group accident and health protection policy does not arise unless and until such disability is suffered and such expense incurred, where liability was predicated upon specific declaration that the policy was effective as to insured only if he became and remained insured and for automatic extension of not more than 90 days in case policy was terminated during period of total disability.

6. SAME—GROUP ACCIDENT AND HEALTH POLICY—TERMINATION—HOSPITAL EXPENSES—TOTAL DISABILITY.

Insurer under group accident and health policy was not liable thereunder for hospital expenses incurred and for total disability suffered after termination of period to which policy was automatically extended because of such total disability, where liability under the policy was predicated upon fact that the insured became and remained insured.

7. SAME—TERMINATION OF POLICY.

Generally, the rights and obligations of parties to an insurance contract on termination thereof depend on the specific provisions of the policy.

8. SAME — GROUP ACCIDENT AND HEALTH POLICY — HOSPITAL EXPENSES—TOTAL DISABILITY—TERMINATION.

Insured under group accident and health policy, who suffered loss of foot while policy was in force as to him was entitled to payment for specific loss as provided in policy and for hospital expenses incurred as well as payments for total disability during its continuance, with interest, but not for hospital expenses or for total disability after termination of policy.

9. COSTS—FAILURE OF EITHER PARTY TO FULLY PREVAIL.

No costs are allowed on appeal, where neither party has fully prevailed.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted January 16, 1952. (Docket No. 65, Calendar No. 45,294.) Decided April 7, 1952. Rehearing denied May 16, 1952.

Action by Dirk VanZanten against National Casualty Company for amount due under insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed in part, reversed in part.

*Marcus, Kelman, Loria, McCroskey & Finucan* (*Jerry S. McCroskey,* of counsel), for plaintiff.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for defendant.

Carr, J. This case involves the interpretation of provisions of a group accident and health protection policy issued by defendant under date of September 1, 1947, to Continental Motors Corporation as policy holder. In terms it insured members of Local 113, UAW–CIO, employees of said corporation, and agreed, subject to the provisions and limitations contained in the policy "to pay benefit for loss of life, limb, sight or time and hospital, surgical and medical expense resulting from accidental bodily injury which does not arise out of or in the course of any occupational employment for wage or profit and which is the sole cause of loss commencing while this policy is in force (hereinafter referred to as 'such injury'); and for loss of time, hospital, surgical and medical expense caused by sickness or disease for which the 'insured member' is not entitled to benefits under any workmen's compensation law and which causes loss commencing while this policy is in force (hereinafter referred to as 'such sickness'); all to the extent herein limited and provided." Provision was made in the agreement for issuing to each "in-

sured member" an individual insurance certificate which was required to set forth a summary of the essential features of the policy, including the insurance coverage and the conditions and limitations applicable thereto.    Plaintiff herein became entitled to the protection of the policy and was issued the required certificate, effective as of September 1, 1948. On the 4th of September following he was involved in an automobile accident in which he sustained serious injuries.    As a result he was hospitalized and received medical and surgical attendance, including an operation for the removal of his right leg.

The certificate issued to the plaintiff stated that it was "merely evidence of insurance," and made specific reference to the provisions of the group policy.    In part 3 of that agreement, under the general caption "Benefits", are set forth the following provisions which are material in the instant case:

"Section A.

"In the event of any of the following specific losses within 120 days from date of accident, which shall result from 'such injury', the company will pay, in addition.to the benefits provided in sections D and E of this policy, the amount herein specified for such loss:

"For loss of life ....................... $2,000
"For loss of both eyes ................. 2,000
"For loss of both hands .............. 2,000
"For loss of both feet ................ 2,000
"For loss of 1 hand and 1 foot ....... 2,000
"For loss of 1 hand .................. 1,000
"For loss of 1 foot .................. 1,000
"For loss of 1 eye .................... 1,000

"The loss of any member or members shall mean, in reference to hand or foot, complete severance at or above the wrist or ankle joint so that no part of the hand or foot remains, or the complete loss of use of the entire hand or foot; and the loss of sight of eye or eyes shall mean the irrecoverable loss of

the entire sight thereof. Not more than 1 such specific benefit, whichever is largest, shall be payable as the result of any 1 accident.

"Section B

"When 'such injury' shall wholly and continuously disable and prevent the 'insured member' from performing any and every duty of his regular employment, the company will pay a weekly accident benefit at the rate of $25 a week for the period the 'insured member' shall be so disabled and under the regular care and personal attendance of a legally qualified physician or surgeon, but not to exceed 52 weeks as the result of any 1 accident.   *   *   *

"Section D

"When, by reason of 'such injury' or 'such sickness' the 'insured member' shall be necessarily confined as a resident patient within a lawfully operated hospital and under the regular care and personal attendance of a legally qualified physician or surgeon, the company will pay, in addition to the benefits otherwise payable, the hospital expense benefit for such hospital confinement, commencing with the first day at the daily rate for ward service (the rate charged for ward service by the hospital in which the 'insured member' is confined), but not to exceed 120 days as the result of any 1 disability.

"When, by reason of 'such injury' or 'such sickness' the 'insured member' shall receive hospital expense benefit as provided in the policy, the company will pay, in addition, the actual expense incurred by the 'insured member' for necessary operating room, administration of anaesthetics, X-ray examinations (excluding X-ray of teeth), laboratory analyses, drugs, medicines and dressings, and any other hospital service charges necessarily incurred by the 'insured member' while hospitalized, and for ambulance service to and from the hospital, as the result of any 1 disability.

"Section E

"When 'such injury' or 'such sickness' shall wholly and continuously disable and prevent the 'insured

member' from performing any and every duty of his employment and the 'insured member' shall require necessary medical treatment by a legally qualified physician or surgeon, the company will pay the actual expense incurred by the 'insured member' for such medical care, but not to exceed $5 for each treatment at the 'insured member's' home or hospital, if confined therein, or $3 for each treatment at the doctor's office, limited to 1 treatment per day and not to exceed 50 treatments as the result of any 1 disability.

"No medical expense benefits shall be payable under this section E prior to the fourth (4th) medical attendance during any period of total disability caused by 'such sickness,' except in cases where said total disability is caused by recurrence of 'such sickness' within the course of 1 insurance year. * * *

"Section F

"When, by reason of 'such injury' or 'such sickness,' the 'insured member' shall necessarily undergo any surgical operation which is performed by a legally qualified physician or surgeon while the 'insured member's' insurance is in force, the company will pay, in addition to the benefits otherwise payable, the actual expense incurred by the 'insured member' for such operation but not to exceed the maximum amount specified for such operation in the schedule of operations as contained in the policy. If 2 or more such operations are performed, payment shall be made for each operation in accordance with the above terms, provided the total amount shall not exceed $150 for such operations performed during any 1 continuous period of total disability.

"In the event of cutting operations and treatment of fractures not specified hereunder, which are performed by a legally qualified physician or surgeon, the company will determine the amount to be paid for such operation on a basis commensurate with other operations specified hereunder."

Part 5 relates to individual terminations, and reads as follows:

"The insurance of an 'insured member' shall automatically terminate by reason of any of the following conditions:

"(1) as of the date this policy is terminated;

"(2) as of the date the 'insured member' terminates his membership with the policyholder;

"(3) as of the premium due date if the required premium for the 'insured member' has not been paid.

"If the insurance of any 'insured member' is terminated in accordance with the above while he is wholly and continuously disabled and prevented from performing every duty pertaining to his employment, then in such instance the insurance will be automatically extended but not to exceed 90 days from the date of such termination."

Part 7, among other recitals, declares that "Termination of this policy shall be without prejudice as to any claim originating prior thereto." Provisions relating to health insurance and providing for weekly sickness benefits are not directly involved. It may be noted in passing, however, that the policy specifically provides that payments shall not be made for both injury and sickness during a period of disability resulting from their concurrence.

Following the accident and loss of plaintiff's right leg he was paid the specific benefit of $1,000, in accordance with part 3, section A, above quoted. Payments under the total disability clause were denied by defendant, it being its claim that under the terms of the policy the benefits provided for specific loss and for total disability were in the alternative, and that, in consequence, when plaintiff accepted the payment of $1,000 he was not entitled to claim also total disability payments at the rate of $25 per week for a period not exceeding 1 year from the date of the accident.

It is agreed that the policy under which plaintiff seeks to recover was terminated on November 1,

1948, that he was on that date totally disabled, and that, under the provisions of part 5 of the policy, above quoted, his insurance was extended for a period of 90 days. Defendant paid to plaintiff by way of benefits for hospital and medical expenses incurred prior to January 31, 1949, the total sum of $1,629.55, of which $610.10 was paid after the trial pursuant to agreement of the parties. Plaintiff claimed that subsequent to the date mentioned, January 31, 1949, he incurred further expenses for hospitalization in the sum of $1,021.81. It was his claim on the trial in circuit court that he was entitled to be paid said sum, together with total disability benefits aggregating $1,300. The case was tried before the circuit judge without a jury, the claims of plaintiff sustained, and judgment entered accordingly. Defendant has appealed, claiming that the trial judge was in error in his interpretation of the pertinent provisions of the insurance contract.

In support of its contention that the clauses in the contract relating to specific loss benefits and weekly disability benefits should be construed as alternative provisions, emphasis is placed by defendant on the provision of the policy indicating the general character of the undertaking, which was, among other things, to pay benefits for loss of "life, limb, sight or time." Attention is directed to the word "or", and it is argued that such term indicates the intent claimed by defendant and necessitates a construction permitting the insured to recover for the loss of his leg, or for continuing total disability, but not for both. The trial court rejected this contention, citing *Federal Life Ins. Co.* v. *Bolinger,* 100 Ind App 222 (193 NE 681). The following language from the opinion in that case is pertinent:

"Referring again to the disputed clause heretofore set out, it is the contention of the appellant that said clause is a part of the policy and that since the word

'or' is used in the clause in question before the word 'time' the appellee is limited either to loss of life, limb, limbs, and sight as 1 alternative or to 'time' lost by reason of the accident as the other alternative, and that a recovery cannot be had for both. We do not so construe the policy. If it may be said that there is any ambiguity in the policy contract in the respect under consideration such ambiguity will be resolved in favor of the insured. It is a familiar rule in the construction of insurance policies that where they are ambiguous or require interpretation or are reasonably susceptible of 2 different constructions so that reasonably informed men on reading them would honestly differ as to their meaning the courts will adopt that construction which is most favorable to the insured."

Defendant also argues that the provision of part 3, section A, of the policy indicating that the specific loss benefit shall be "in addition to the benefits provided in sections D and E of this policy" should be regarded as excluding liability under other sections. It appears, however, that defendant recognized its liability under section F, above quoted, and made payment of the expense of the surgical operation, action scarcely consistent with the claim now made. The reference to the benefits provided in sections D and E was apparently inserted for the purpose of clarifying the rights of the insured rather than to limit the liability of the insurer.

If it was the intention of the defendant in drafting the policy involved in the instant case to exclude liability for total disability benefits in the event of payment for a specific loss, it is obvious that it might have expressed such intent in clear and unequivocal language as was done in the provision, above noted, denying liability for the payment of double benefits for disability because of an injury and also because of sickness. We find nothing in the policy requiring the interpretation for which defendant contends. If

the instrument is ambiguous, it must, under the applicable rule, be construed in favor of the insured *Barney* v. *Preferred Automobile Ins. Exchange*, 240 Mich 199; *C. & J. Commercial Driveway, Inc.*, v. *Fidelity & Guaranty Fire Corp.*, 258 Mich 624; *Lintern* v. *Zente*, 327 Mich 595; *Boloven* v. *Nicholson*, 328 Mich 496.

Counsel have directed our attention to decisions involving insurance policies in which the specific clauses in issue were construed as imposing liability for the payment of benefits in the alternative. Without discussing such cases in detail, we think they may be differentiated on the basis of the specific language construed. In the case at bar we cannot read into the policy a limitation of liability not therein contained, either expressly or by necessary implication. Under a somewhat analogous situation, it was said in *Hart* v. *National Masonic Accident Association*, 105 Iowa 717 (75 NW 508):

"The appellant contends that, if the plaintiff is entitled to recover for the loss of his foot, he is not also entitled to recover for weekly benefits. The certificate provides, in terms, for the payment of weekly benefits and for the loss of a foot in certain contingencies. We do not find anything in the certificate, or in the articles of incorporation or bylaws, which justifies the conclusion that a member might not recover for the loss of a foot and for the loss of time caused by the same injury."

It is our conclusion that the trial judge was right in holding that, notwithstanding the payment of the specific loss benefit, plaintiff was entitled to assert the right to protection also under the total disability clause in accordance with the terms of the policy as written. Whether such liability continued from and after January 31, 1949, is a matter for further discussion.

This brings us to a consideration of the effect of the termination clause set forth in part 5 of the policy. Appellant insists that its obligations under the contract were terminated as of January 31, 1949, the date to which plaintiff's insurance was continued because of his total disability. It is the position of counsel for the appellee that the claims for disability benefits and for hospitalization subsequent to that date should be regarded as originating prior to the date of termination of the policy. Such contention necessarily involves a claim to disability benefits for the full period of 52 weeks at $25 per week, and for hospital expenses incurred by plaintiff after the insurance terminated. This suggests the query whether the claims for disability and hospitalization originated at the time the accident occurred or at the time the disability was suffered and the expenses incurred. Consideration of the provisions of the policy leads to the conclusion that the liability to pay benefits for disability and for hospital and medical services did not arise unless and until such disability was suffered and such expense incurred.

Counsel for plaintiff cite and rely on *Horn's Administrator* v. *Prudential Ins. Co. of America,* 252 Ky 137 (65 SW2d 1017), and *Murray* v. *Metropolitan Life Ins. Co.,* 145 Miss 266 (110 So 660). In the Kentucky case the policy on which the suit was brought provided that if the employee became totally and permanently disabled or mentally incapacitated, "the amount of insurance payable at death from natural causes will be paid to said employee in monthly instalments during 2 years, the first instalment to be payable immediately upon receipt by the company of due proof of such disability or incapacity; in accordance with the provisions of said policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the policy, should such disability or incapacity prove to be

temporary and not permanent." It will be noted
that the language used imposed absolute liability in
the event of permanent disability for an amount,
payable in instalments, not exceeding the death ben-
efit, which was the sum of $2,000.

In the Mississippi case cited, the policy provision
was of like character, and read as follows:

" *'Disability Benefits.*—An employee insured un-
der this plan who shall become wholly and perma-
nently disabled while in our employ before reaching
the age of 60 either by accidental injury or disease,
and is thereby permanently, continuously and wholly
prevented from pursuing any and all gainful occupa-
tion, will be regarded as a claimant by the Metropoli-
tan Life Insurance Company. Six months after the
receipt of due proof of such disablement, the insur-
ance company will begin making payments of the
amount of insurance under any 1 of the following
plans at the option of the person insured,' (here
follow optionable instalment settlements allowable).

" 'In the event of the death of the insured during
the period of total permanent disability, any instal-
ments remaining unpaid shall be payable to the des-
ignated beneficiary.' "

Obviously the policies involved in these cases cre-
ated liability quite different in nature from that as-
sumed by defendant under the contract in the case
at bar. We do not have here an unqualified assump-
tion of liability in a definite amount in the event of
total disability. The same situation exists with ref-
erence to payments for hospitalization. We find
nothing in the policy indicating the existence of li-
ability on defendant's part for loss or for expenses
suffered or incurred after the termination of the in-
surance. The language of the policy, read in its
entirety, is not consistent with the theory that de-
fendant assumed any possible continuing liability
therefor. The certificate issued to plaintiff on Sep-

tember 1, 1948, specifically declared that the insurance should be "effective only if the insured becomes and remains insured." The clause in part 5 of the policy, with reference to termination during total disability, to the effect that the insurance of the employee should be extended in such case for a period not exceeding 90 days after termination is also significant. It suggests an intent to give to the insured an added measure of protection to which he would not otherwise be entitled.

In *Hawthorne* v. *Metropolitan Life Ins. Co.*, 285 Mich 329, it was said:

"Group insurance policies are issued to the employer to insure employees. One who is not an employee is not insurable. The employee is entitled to coverage under the certificate issued to him only while he remains in the employ of the employer and upon payment at the beginning of each month of the premium upon the insurance policy. *Aetna Life Ins. Co.* v. *Carroll*, 188 Ark 154 (65 SW2d 25). No recovery may be had upon an insurance policy for the death of one who has been an employee of the insured under a group policy after the termination of his employment (*Colter* v. *Travelers Ins. Co.*, 270 Mass 424 [170 NE 407]), except in strict compliance with the terms of the policy. *Nelson* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 115 Pa Super 15 (174 A 624). The very purpose of the group insurance is to safeguard or provide for employees. It would be unreasonable to conclude the policy would inure to the benefit of those who have ceased to be employees. The courts have repeatedly given effect to provisions in policies providing for automatic discontinuance. *Pegues* v. *Equitable Life Assurance Society of the U. S.* (Mo App), 57 SW2d 705; *Douglas* v. *Metropolitan Life Ins. Co.* (Mo App), 297 SW 87; *Aetna Life Ins. Co.* v. *Lembright*, 32 Ohio App 10 (166 NE 586).

"Recovery must be based upon the contract. We cannot, under the guise of construction, reform a policy of insurance or write a new insurance contract. *Lombardi* v. *Metropolitan Life Ins. Co.,* 271 Mich 265."

The rule above mentioned, requiring interpretation of contracts of insurance in favor of the insured, has no application unless the language used is ambiguous. *Wozniak* v. *John Hancock Mutual Life Ins. Co.,* 288 Mich 612. In the instant case the provisions in the policy relating to its termination are not uncertain or indefinite. The policy was terminated on November 1, 1948, and the extension of insurance on the ground of plaintiff's total disability at the time was limited to a period not exceeding 90 days. A somewhat similar provision was involved in *John Hancock Mutual Life Ins. Co.* v. *Gordon,* 109 Ind App 58 (32 NE2d 727). That case was based on an employees' group life insurance policy which contained a provision that in the event an employee was wholly disabled at the time he terminated his employment his insurance should continue for a period of 3 months, and thereafter during the continuance of such disability until the employer notified the company to terminate. The employment of the plaintiff ended but no notice was at any time given by the employer to the insurer. In consequence the insurance, if plaintiff was disabled when his employment ceased, continued in effect. It was not questioned, however, that defendant's liability might have been terminated by observing the procedure set forth in the policy. Whether the plaintiff was totally disabled at the time he left his employment, or was discharged, was a disputed issue of fact.

In *Johnson* v. *Travelers Ins. Co.,* 51 Ga App 243 (180 SE 387), in commenting upon a somewhat analogous situation, it was said:

"Under the terms of the policy, as above set forth, the protection of the insurance ended whenever the employment terminated, or prior thereto upon the discontinuance of payment of premiums for the insured by the employer, the company being liable only for any total and permanent disability in the amount of insurance in force under the policy at the time of the receipt of due proofs thereof. The policy further provided that upon the furnishing of such proofs all further payments of premiums became waived, and that upon the insured becoming wholly and permanently disabled while the policy was in force, the protection would be extended for 3 months from the date of such disability and thereafter until the employer actually notified the company to terminate the insurance. In other words, by the terms of the policy it clearly and plainly appears that the total and permanent disability of the insured while the policy was in force would operate to stay its cancellation on account of a discontinuance of the employment or of nonpayment of the premium for at least 3 months and until the policy was thereafter actually canceled; and if prior to the expiration of the 3 months or prior to any subsequent cancellation, proofs of such disability were submitted, the company would, without the payment of further premiums, pay the amount of insurance in force under the policy at the time of the receipt of such proofs. The contention of the insured that, since she became totally and permanently disabled while the policy was in force, her right of action under the terms of the policy became thereupon fixed, and that no subsequent cancellation of the policy could affect her accrued rights, fails to take into account that, upon the happening of such a disability, all consequent liability was expressly made subject to the conditions and provisions set forth in the contract, under which the insurance payable would be only the amount of insurance in force at the time of the receipt of due proofs of the total disability; and that at the time the proofs in the instant case were submitted, the

policy had already been canceled in accordance with its terms after the 3-months stay had expired."

Generally speaking, the rights and obligations of parties to an insurance contract on termination thereof depend on the specific provisions of the policy. In the instant case plaintiff was not an insured from and after January 31, 1949. The contract of the defendant may not be interpreted as imposing on it liability for the payment of benefits for disability existing thereafter, nor expenses for hospital services subsequently incurred. Claims therefor did not "originate" prior to the termination of the policy on November 1, 1948, within the meaning of the term as used in the provision of part 7 of the policy, above quoted. Such provision, we think, must be construed as having reference to benefits accruing while the insurance was in effect. The coverage of the policy was not continued past the 90-day period following termination, and consequently was not in force and effect at the time the loss was sustained and the expenses incurred for which payment is here sought. It follows that plaintiff is entitled to recover total disability benefits, as provided in the policy, for the period of such disability prior to January 31, 1949, with interest, but is not entitled to a judgment based on loss suffered and expense incurred after said date.

The cause is remanded to the circuit court with directions to set aside the judgment entered, and to render judgment in accordance herewith. Neither party having fully prevailed, no costs are allowed.

North, C. J., and Dethmers, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.