450 So.2d 549 (1984)
Mark A. DAVIS, Appellant,
v.
NATIONWIDE LIFE INSURANCE COMPANY, a Foreign Corporation, Appellee.
No. 82-1358.
District Court of Appeal of Florida, Fifth District.
April 26, 1984.
Rehearing Denied May 25, 1984.
Wooten, Honeywell, Kest & Martinez, P.A., Orlando, and McClellan, Kaster & Vostrejs, P.A., Ocala, for appellant.
W. David Rogers, Jr. of Rogers & Dowling, P.A., Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Mark Davis appeals from a final summary judgment in favor of Nationwide Life Insurance Company denying him benefits under a hospitalization policy carried by his employer, Showalter Flying Service.
Nationwide denied coverage on the basis that the policy was not effective until November 1, 1981, and Davis' accident, which resulted in the amputation of his left leg below the knee, occurred on October 12, 1981.
The crucial question in this case is when Davis became employed by Showalter since under the terms of the policy, an "eligible person" is defined as:
Any person who
* * * * * *
(2) subsequent to the effective date of this Policy, has been regularly employed by the Policyholder not less than three months. (emphasis added)
The effective date of insurance was stated to be:
The effective date of insurance for an eligible person will be the first of the policy month coinciding with or next following the date he becomes an eligible person.
*550 The insurance policy defines "policy month" as "a period of successive days commencing on the first day of each calendar month and ending on the day immediately preceding the corresponding day of the next following calendar month." The policy does not define the word "employed."
The factual circumstances of Davis' employment are as follows. On June 16, 1981, Davis filled out an application for employment. On the following day, he was interviewed by John Stafford, vice president of line operations for Showalter. While no vacancy existed at this time, a position became available shortly thereafter. On July 1, Stafford had Davis come in and sign various paperwork, e.g., an acknowledgement that he had read the company rules and regulations and that he was on a ninety-day probationary period. Stafford testified in his deposition that he hired Davis on July 1 and that Davis was to report for work on July 2. Stafford further said that as far as Showalter was concerned, Davis' ninety-day probationary period commenced on July 1, 1981, and he was an employee as of that date.
This testimony is significant because Davis argues that he was employed as of July 1, 1981, and therefore under the terms of the hospitalization policy set out above, he was covered by the policy three months later, on October 1, 1981, some eleven days before his accident. Nationwide argues that Davis was an employee as of July 2, 1981, and therefore under the terms of the policy, coverage would not become effective until November 1, 1981. In this regard, Nationwide relies on the deposition testimony of Showalter's general manager, Ralph Loos, Jr. He testified that while there was no written policy, it was his impression "that you don't have an employee until he's on the payroll being paid."[1] He thought the probationary period begins when a person reports to work.
Various documents were introduced and bore the date July 2nd, such as Davis' time card and employee history form. However, at the bottom of the Employment Application Form, it is noted that Davis was "hired 7/1/81," and "will report 7/2/81."
We believe that no disputed issues of material fact exist in this case and rather the case turns on the construction to be placed on the policy language, particularly the word "employed." This issue was one of law for the trial court and hence resolution by summary judgment was proper. See Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392 (Fla. 1st DCA 1979); Sandron Corp. v. Utica Mutual Ins. Co., 360 So.2d 477 (Fla. 3d DCA 1978). However, we hold that the court erred in resolving this matter adversely to Davis.
When a term in an insurance policy is ambiguous, as the term "employed" is in this case, the court is required to construe it in favor of the insured and against the insurer. Hartnett v. Southern Ins. Co., 181 So.2d 524 (Fla. 1965); National Merchandise v. United Service Automobile Ass'n., 400 So.2d 526 (Fla. 1st DCA 1981). If an insurer intends to restrict coverage, it should use language clearly stating its purpose. Ward v. Nationwide Mutual Fire Ins. Co., 364 So.2d 73 (Fla. 2d DCA 1978).
According to Black's Law Dictionary, "to employ" means "to engage in one's service; to hire ... and, when used in respect to a servant or hired laborer, the term is equivalent to hiring, which implies a request and a contract for a compensation." Black's Law Dictionary (5th ed. 1979). See Tennessee Coal Iron & R. Co. v. Muscoda Local No. 123, Ala., 321 U.S. 590, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). The word "employ" is defined in Webster's New Collegiate Dictionary (1979), as: "to use or engage the services of; to provide with a job that pays wages or a salary."
In the instant case, Davis had requested employment and was given a job, i.e., hired on July 1, 1981. At that time, he was informed of the terms and conditions of his employment and signed the necessary paperwork. At this point, Showalter *551 and Davis had a contract of employment and under this contract, Davis was subject to direction from Showalter as to when and how to perform the work for which he would be paid. Clearly, Showalter could have, as it did, request that Davis begin actual work the following day. The fact that Davis would not begin to earn wages until he actually commenced work for Showalter did not prevent him from becoming "employed" on July 1, 1981. Nationwide is, in essence, asking that the term "employed" be construed to mean when actual work is begun. However, if Nationwide, which drafted the policy, wished to so limit coverage, it need only have used more restrictive language clearly stating its desire. Ward v. Nationwide Mutual.
REVERSED and REMANDED for entry of judgment for Davis.
DAUKSCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I agree with the trial judge that the undisputed facts in this case establish Davis was not covered by the group policy at the time of his accident, and the wording of the policy was not ambiguous. This is a tough case. Davis missed being covered by his employer's group policy by just one day. Had Davis started work on July 1, 1981, his coverage clearly would have commenced October 1, 1981, but because he started on July 2, 1981, I do not think he was covered until the next full calendar month, beginning November 1, 1981. As the fates would have it, Davis' motorcycle accident occurred on October 12, 1981. Davis lost his leg below the knee, and he necessarily incurred medical and hospital bills. He needs the insurance money, and I sympathize with the result of the majority opinion, although I cannot agree with it.
The record shows, without any real dispute, the following occurred. Davis filed an application for employment with Showalter Flying Service, Inc. on June 16, 1981. No jobs were then open, but Davis checked frequently with Stafford, the line operation supervisor. On July 1st, Stafford told Davis to come talk with him, and he would hire him.
Davis spent one hour at Showalter on July 1st. Stafford told him about the company, its benefits and its history. He offered Davis a certain hourly wage. Davis read Showalter's pamphlet containing employee rules and regulations and he signed a form acknowledging he had done so. Davis also signed a W-4 form and a letter recognizing he would be on probation for ninety days. Stafford introduced Davis to his work supervisor and told him to report for work the next morning at 8:00 a.m.
On July 2nd Davis reported for work, and worked his first full day. His time card was first dated July 2nd. His pay commenced then. All of Showalter's business records show Davis commenced work on July 2nd. At the bottom of the Employment Application Form it is noted "hired 7/1/81," "will report 7/2/81." The W-4 form was noted "hired 7/2/81," and the bookkeeper entered him into the business' computer that day. The Showalter confidential employee records show his employment date as July 2, 1981.
The records regarding the group policy also indicate Davis' date of employment was July 2, 1981. Showalter forwarded Davis' insurance form, which had been filled out by Davis, to Nationwide. The form noted the date of employment was July 2, 1981. Nationwide did not bill Showalter for any premiums for Davis until December; and the coverage date for Davis (as well as another employee hired on the same date) was November 1, 1981. Davis' individual insurance certificate, issued by Nationwide, shows his coverage began November 1, 1981. The certificate was not received by Davis until after his accident, but there is no indication Nationwide ever intended to cover him until November 1st. Another employee who began work July 2nd with Davis, but who was hired before, was assigned November 1, 1981, as the commencement of his coverage date.
*552 In presenting his insurance claim to Nationwide, Davis signed a claim form dated October 16, 1981, four days after the accident, in which he said his date of employment was July 2, 1981. Further, the Nationwide Group Enrollment Card which Davis filled out and signed on October 6, 1981, six days before the accident, stated his date of employment was July 2, 1981.
The only basis to hold that Davis was "employed" on July 1st, is Stafford's testimony that he "hired" Davis on July 1st. This is disputed by the deposition of another Showalter executive, Ralph Loos. He testified that Showalter did not consider a man its employee until he "clocks in" and is on the payroll. Loos thought there was only an agreement to hire on July 1st, which was revocable by either side. "I feel like that we have hired him not until he's shown up and starts to work... ." At least, there is a conflict in the facts, which should surely prevent entry of summary judgment for Davis.
The majority finds that the words "employ" and "employment" as used in the group policy are ambiguous because employ may be used in some contexts to be a synonym of "to hire."[1] Actually the real ambiguity here, if it exists, stems from the fact that both "hire" and "employ" may refer to the act of entering into a contract to hire or employ; or to the state of actually being an employee or hireling at work.[2]
However, ambiguity does not result automatically just because a word in the English language has more than one possible meaning. Out of such stuff poetry and puns are made. For example, the word "embrace" used as a verb, has four similar, but different meanings[3] and the word "bottom," used as a noun, has nine.[4] Whether what is meant is the posterior end of the trunk or the trousers of pajamas depends upon the context in which the word is used. If it can be reasonably used in two different senses, then an ambiguity arises.[5] But if only one meaning is reasonable, then there is no ambiguity.[6]
The question in this case is whether "employment" can have been used in context of this group insurance policy in the sense of entering into an agreement to hire or employ. See Cipa v. Metropolitan Life Insurance Company, 155 Pa.Super. 339, 38 A.2d 518 (1944); 1 J. Appleman & J. Appleman, Insurance Law and Practice § 44 (1981). Although there was only a one day gap between the agreement to hire Davis and his commencing work, in another case using this one as precedent, there may be a span of days or weeks, or even longer. Is it reasonable to start the running of an eligibility period for coverage under an employee group policy on the date of an agreement to hire, as opposed to actually beginning work? I think not. See Boyer v. Travelers Insurance Company, 7 Cal.2d 615, 61 P.2d 925 (1936).
Group policy insurance is generally procured by an employer for the benefit of a shifting group of individuals who are the employer's actual employees from time to time. 1 J. Appleman, supra, at §§ 41 & 44; see Van Zanten v. National Casualty Company, 333 Mich. 28, 52 N.W.2d 581 *553 (1952).[7] As in this case, the premiums are often paid by the employer, although some contributions may be made by the employee for special benefits or coverage for dependents. In a sense, coverage is part of an employee's compensation for working for his employer, like his salary. The policies frequently reinforce the actual work requirement by stating that a fixed period of employment time must pass before benefits accrue. 1 J. Appleman supra, at § 44. "Employment" in the context of group policies usually refers to the status of being an employee rather than to a contractual relationship. Annot., 68 A.L.R.2d 8 (1959). Clearly it makes no sense to commence coverage before actual work has started and before any premiums are paid.
It appears the Nationwide policy provisions in this case are typical of such group policies. To qualify or become eligible for coverage, an employee must be "actively at work" on the day his insurance coverage begins; and he must have been "regularly employed" by the employer for no less than three months. "Regularly employed" is defined as "continuously employed by the Policyholder for at least 30 hours each week."
Further, the records furnished the insurance company by Showalter as well as Davis and signed by both indicates the date of Davis' employment was July 2, 1981. An insurance company has the right to rely on information it has received from an employer and an employee. See 1 J. Appleman, supra, at § 43.
Employment in this context could only reasonably mean the state of being actually employed and not the prior date of entering into an agreement to hire. The latter meaning is unreasonable in this context, and, in my view, constitutes a forced construction or interpretation which effects a result not intended by the parties. We are bound to give full force and effect to the terms of an insurance contract where the meaning is clear and it is susceptible of only one interpretation. Massachusetts Mutual Life Insurance Company v. DeSalvo, 174 Colo. 115, 482 P.2d 380 (1971); Shaw v. Bankers Life Company, 213 So.2d 514 (Fla. 3d DCA 1968); see 44 Am.Jur.2d Insurance § 1845 (1982). Because I think there is no ambiguity as to the language of this policy and no dispute as to the facts which determine coverage, I would affirm the summary judgment.
NOTES
[1] Davis' pay period commenced on July 2, 1981.
[1] 30 C.J.S. Employ (1965); 40 C.J.S. Hire (1944); see A.J. Meyer & Co. v. Unemployment Compensation Comm'n, 348 Mo. 147, 152 S.W.2d 184 (1941), superseded by statute as stated in Beal v. Industrial Comm'n, 535 S.W.2d 450 (Mo. App. 1975); Roan v. D.W. Falls, Inc., 72 N.M. 464, 384 P.2d 896 (1963); Board of Commissioners v. Department of Public Health, 44 N.M. 189, 100 P.2d 222 (1940).
[2] Powers v. Fisher Controls Co., Inc., 246 N.W.2d 279 (Iowa 1976); Black's Law Dictionary 471 & 656 (5th ed. 1979); Webster's New Collegiate Dictionary 370 & 537 (1981).
[3] Webster's New Collegiate Dictionary 368 (1981).
[4] Webster's New Collegiate Dictionary 128 (1981).
[5] See Denman Rubber Mfg. Co. v. World Tire Corp., 396 So.2d 728 (Fla. 5th DCA 1981); Van Zanten v. National Cas. Co., 333 Mich. 28, 52 N.W.2d 581 (1952).
[6] See Davison v. Business Men's Assurance Co. of America, 85 N.M. 796, 518 P.2d 776 (1974); Kloepfer v. Continental Assurance Co., 23 Utah 2d 178, 460 P.2d 339 (1969).
[7] Most policies limit coverage to full-time employees by definitions. Annot. 57 A.L.R.3d 801 (1974).