CONTINENTAL CASUALTY COMPANY, a foreign corporation, Plaintiff-Appellee,

v.

Bernard WENDT, Defendant-Appellant.

No. 99-12520.

United States Court of Appeals,

Eleventh Circuit.

March 7, 2000.

Appeal from the United States District Court for the Middle District of Florida.(No. 97-00323-CIV-0C-10B), Wm. Terrell Hodges, Judge.

Before DUBINA and BLACK, Circuit Judges, and BECHTLE[*], Senior District Judge.

PER CURIAM:

Defendant-Appellant Bernard Wendt appeals the district court's grant of summary judgment in favor of plaintiff-appellee Continental Casualty Company in a declaratory judgment action brought by Continental seeking a declaration of rights and obligations on insurance policy(ies) issued by Continental to Defendant Thomas P. Hall.

We affirm the district court's judgment based on its well-reasoned order filed on June 29, 1999, and attached hereto as an Appendix.

AFFIRMED.

APPENDIX

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

CONTINENTAL CASUALTY COMPANY, a foreign corporation, Plaintiff,

v.

---

[*]Honorable Louis C. Bechtle, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

Thomas P. HALL, P.A., Thomas P. Hall, individually, and Bernard Wendt, Defendants.

Case No. 97-323-CIV-OC-10B.

ORDER

HODGES, District Judge:

Plaintiff has brought this action for declaratory judgment to determine the applicability of the limits of a Lawyers Professional Liability Insurance Policy issued by the Plaintiff to Defendant, Thomas P. Hall. The case is now before the Court on the Plaintiff's Motion for Summary Judgment (Doc. 14). Defendant Wendt has filed his response (Doc. 17), and the motion is now ripe for decision. Upon due consideration, the Court has determined that the motion for summary judgment is due to be Granted.

*FACTS AND PROCEDURAL HISTORY*

The pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, viewed in the light most favorable to the non-moving party, disclose the following details.

Plaintiff, Continental Casualty Company ("Continental"), issued two Lawyers Professional Liability policies to Defendants Thomas P. Hall, P.A. and Thomas P. Hall ("Hall"). *See* Exhs. 1 & 2 to Plaintiff's Motion for Summary Judgment (Doc. 14). The first policy was in effect from November 1, 1995 to November 1, 1996 ("the 1996 policy"). The second policy was in effect from November 1, 1996 to November 1, 1997 (the "1997 policy"). For all purposes relevant to this case, the two policies contained identical terms and provisions. Both policies had limits of liability of $100,000 per claim with a $300,000 aggregate. The limits available on both policies were diminished by attorneys fees and costs incurred in defense of any claims. *See* Affidavit of Nancy Pistilli Hurst, Exh. 5 to Plaintiff's Motion for Summary Judgment (Doc. 14).

From the Spring of 1994 through the Summer of 1995, Hall promoted the sale of notes issued by K.D. Trinh and also provided legal services regarding various aspects of the transactions. *See* Defendant's' Response to Plaintiff's Motion for Summary Judgment (Doc. 17, pg. 8). K.D. Trinh is a Canadian federal

2

corporation, doing business in the state of Florida by selling promissory notes to investors through agents. One such agent was Bernard Wendt. *See* First Amended third-Party Complaint, Exh. 3, pg. 1 to Plaintiff's Motion for Summary Judgment (Doc. 14).

In 1996, Thomas Hall and Bernard Wendt, among others, were named as Defendants in a class action law suit, styled *Edwin Cowan et al. V. K.D. Trinh Investments, Inc.* ("the Cowan Litigation"). *See* Third Amended Complaint, Exh. 7 to Plaintiff's Motion for Summary Judgment (Doc. 14). The case, filed in the United States District Court for the Middle District of Florida, Fort Myers Division, was brought by individuals who had invested in K.D. Trinh Investments, Inc. Hall was sued for giving inaccurate legal advice, and for making false and misleading statements regarding the legality of K.D. Trinh Investments as securities. *See* Defendants' Response (Doc. 17, pg. 2). On April 10, 1996, during the 1996 policy period, Continental was notified of the claims brought against Hall. *See* Affidavit of Nancy Pistilli Hurst, Exh. 5 to Plaintiff's Motion for Summary Judgment (Doc. 14). Continental ultimately settled the claims in the Cowan litigation by payment of the total aggregate limit of liability available under the 1996 policy less fees and expenses. *See Release of All Claims,* Exh. 5.A to Plaintiff's Motion for Summary Judgment (Doc. 14). The settlement amounted to $295,000.00 plus any retainage not spent by Hall's counsel in monitoring the action and having the release approved. *See id.*

In August of 1997, during the period of the second policy, Bernard Wendt filed a Third Party Complaint against Hall in the case of *Ed Lasky, et al. v. Bernard Wendt v. Thomas P. Hall, et al.* (Case No. 97-520-CA) in the Fifth Judicial Circuit in and for Lake County, Florida ("the Wendt Litigation"). *See* Exhs. 3 & 4 to Plaintiff's Motion for Summary Judgment (Doc. 14). In the Wendt litigation, the complaint alleged that Wendt had sold over $1 million dollars worth of promissory notes to over 44 investors. *See* Exh. 3.A, ¶ 9 to Plaintiff's Motion for Summary Judgment (Doc. 14). The complaint claimed that K.D. Trinh was, in fact, a "fraudulent enterprise which sustained itself through its selling agents, including Wendt." *See id.* at ¶ 19. Wendt then filed the third party complaint against Hall claiming that Hall had made misrepresentations

3

to him regarding the legality of such investments. *See* Exhs. 3 & 4 to Plaintiff's motion for summary judgment (Doc. 14).

Hall notified Continental of the Wendt litigation in August of 1997 and ultimately made a claim under the 1997 policy. *See* Second Amended Complaint (Doc. 21, ¶ 13). Continental now seeks declaratory judgment concerning its obligation to provide insurance to Hall for the second lawsuit—the Wendt litigation—filed during the 1997 policy period.

Section 1 of the 1997 policy issued to Hall provides as follows:

I.      Coverage Agreements

* * * *

B.      The wrongful act, [as insured above], must happen before the end of the policy term stated on the Declarations and claim therefor must first be made against you and reported to us during that policy term.

Any claim or claims arising out of the same or related wrongful acts, shall be considered first made during the policy term in which the earliest claim arising out of such wrongful acts was made.

Section III(a), entitled Limits of Liability, states that:

the limit of liability stated for "each claim" is the maximum we will pay for all claims and claim expenses arising out of, or in connection with, the same or related wrongful acts. All such claims whenever made, shall be considered first made during the policy term in which the earliest claim arising out of such claim and related wrongful acts was made, and all such claims shall be subject to the same limit of liability. This limit applies regardless of the number of you who are insured under this policy or the number of claims against you.

"Claim" is defined as "the receipt of a demand for money or services, naming you and alleging a wrongful act." *See* Insurance Contract, Exh. 2 to Plaintiff's Motion for Summary Judgment (Doc. 14).

Plaintiff commenced this action by the filing of a complaint (Doc .1) for declaratory judgment pursuant to 28 U.S.C. § 2201 seeking a declaratory decree that "Continental has no duty to defend or indemnify Hall for the claims brought against him by Wendt" or alternatively, that "Continental's liability in this regard [is limited] to $100,000 [for] 'each claim.' " The Plaintiffs have amended the complaint twice.

4

On September 28, 1998, Plaintiff filed a motion for summary judgment (Doc. 14) to which the Defendant Wendt has filed his response (Doc. 17).

*SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R .Civ.P. 56(c). In applying this standard, the court must examine the pleadings, affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The moving party bears the initial burden of establishing the nonexistence of a triable fact issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with sufficient evidence of each and every element that he or she must prove. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, and answers to interrogatories or other evidence to demonstrate that a material fact issue remains to be tried. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Plaintiff alleges, in its motion for summary judgment, that, as a matter of law, the term "same or related" acts in the insurance policy is not ambiguous. *See* Plaintiff's Motion for Summary Judgment (Doc. 14, pgs. 6-8). The Plaintiff also argues that no material issues of fact remain as to whether Hall's conduct, which was the subject of the Cowan litigation, was the same or was related to his conduct which forms the basis of the Wendt litigation. *See id.* at 9.

The Defendant responds that the term "related" as used in the policy is ambiguous. *See* Defendant's Memorandum in Response to Plaintiff's Motion for Summary Judgment (Doc. 17, pgs. 4-5) Furthermore, the Defendant argues that Hall's actions were not in fact "the same or related" in the two lawsuits. *See id.* at pgs. 6-7. The basis for this assertion is the Defendant's theory that "[a]ll of the acts or omissions by Hall constituted separate and distinct acts to individuals ... Hall's duty in each circumstance was distinct and

5

different to each person who was affected differently by his various acts and omissions." *See* Defendant's memorandum in response (Doc. 17, Pgs. 11-12).

*A.      Ambiguity in the Insurance Contract*

Under Florida law, when a term in an insurance policy is ambiguous, the court must construe it in favor of the insured and against the insurer. *See Gas Kwick, Inc. v. United Pacific Insurance Co.,* 58 F.3d 1536, 1539 (11th Cir.1995)(quoting *Davis v. Nationwide Life Ins. Co.,* 450 So.2d 549, 550 (Fla. 5th DCA 1984)). "An insurance contract is deemed ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made." *Id.* (citing *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379 (11th Cir.1993)). However, "ambiguity is not invariably present when a contract requires interpretation." *Id.* Furthermore, the "mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous." *State Farm Fire and Cas. Co. v. Metropolitan Dade County,* 639 So.2d 63 (Fla. 3d DCA 1994)(quoting *Jefferson Ins. Co. v. Sea World,* 586 So.2d 95, 97 (Fla. 5th DCA 1991)).

The Defendant argues that the term "related wrongful acts" is susceptible to two or more meanings and is ambiguous. Thus, the Defendant contends that the term must be interpreted or construed against the insurer and in favor of the insured.

Neither the Eleventh Circuit nor any Florida appellate court has determined whether the term "related wrongful act" as used in an insurance contract is necessarily ambiguous.[1] Moreover, courts outside of the

---

[1]Two Florida cases have interpreted the term "related"; however, neither of them ruled that the term was necessarily ambiguous. In *Pacific Employers Ins. v. Ott,* 545 So.2d 462 (Fla.App. 3 Dist.1989), the Third District Court of Appeal of Florida held that an insurance policy which provided that multiple claims or suits arising out of single act of omission or related series of acts or omissions are to be treated as one claim was not ambiguous. The case involved an attorney's negligent handling of a helicopter sale which resulted in three of the attorney's clients becoming liable to another party. The court remanded the case to the trial court for a determination as to whether the attorney had committed one act of negligence or two "separate, unrelated acts of negligence."

Second, Defendant cite *Continental Casualty Company v. First Arlington Investment Corp.,* 497 So.2d 726 (Fla. 2d DCA 1986), which also involved a Lawyer's Liability Insurance Policy. In this case, however, the policy language did not include the term "related." Rather, it provided that

6

Eleventh Circuit are not in agreement as to the term's ambiguity. *See Arizona Prop. & Cas. Ins. Guar. Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (Ariz.1987)(noting that to interpret the term "related" as that word is commonly understood would lead to ambiguity); *Bay Cities Paving & Grading v. Lawyers' Mut.,* 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 702, 855 P.2d 1263 (1993)(holding that the word "related" as commonly understood and used encompasses both logical and causal connections); *St. Paul Fire & Marine Insurance Co. v. Chong,* 787 F.Supp. 183, 186-87 (D. Kansas 1992)(holding the term "series of related wrongful acts" to be ambiguous and construing the term narrowly to refer solely to "multiple causally connected" acts); *Gregory v. Home Ins. Company,* 876 F.2d 602, 605-06 (7th Cir.1989)(noting that the word "related" covers a very broad range of connections, both causal and logical).

I believe that the most persuasive of these authorities is the Seventh Circuit decision in *Gregory.* The words "relate" or "related" are commonly understood terms in everyday usage. They are defined in the dictionary as meaning a "logical or causal connection between" two events. *See* Webster's Third New International Dictionary (1981). There is no ambiguity unless one is *created* through the device of simply ignoring one half of the definition. This is essentially the flaw in the reasoning of the Arizona court in *Helme, supra,* as recognized in *Gregory.* The Seventh Circuit said:

> We agree with the *Helme* court that the common understanding of the word "related" covers a very broad range of connections, both causal and logical. However, we don't think the rule requiring insurance policies to be construed against the party who chose the language requires such a drastic restriction of the natural scope of the definition of the word "related." Parties are generally free to include language of their choice in contracts, and courts should refrain from rewriting them. At some

the limit of liability for "each claim" would be "a total limit of the company's liability for all damages rising out of all acts or omissions in connection with the same professional service regardless of the number of claims or claimants." Thus, the language in the insurance policy differed from the language at issue in the case presently before the Court. Additionally, however, the Florida Court noted that in order to protect each of his clients, it was necessary for the lawyer to render separate distinct services to each of them. Thus, under the provisions of the policy, "the damages did not arise from the same professional service."

The instant case presents no such policy language. Additionally, the case does not present separate professional services. Hall allegedly held himself out as an attorney who had particular knowledge of securities law and who represented to investors and agents of K.D. Trinh, the legality of the promissory notes.

7

point, of course, a logical connection may be too tenuous reasonably to be called a relationship, and the rule of restrictive reading of broad language would come into play.

*Gregory,* 876 F.2d at 606 *(internal citations omitted).*

I believe this holding of the Seventh Circuit to be harmonious with Florida law. It is well established that " '[i]n construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries.' " *Watson v. Prudential Property & Cas. Co.,* 696 So.2d 394, 396 (Fla. 3d DCA 1996)(quoting *Brill v. Indianapolis Life Ins. Co.,* 784 F.2d 1511, 1513 (11th Cir.1986)(internal citations omitted)). The plain meaning of the word "relate" is "to show or establish a logical or causal connection between." Applying the common meaning of the word to the facts of this case, the court finds that Hall's acts, which formed the basis for the first suit, "relate" or have a "logical connection" in any "meaningful sense of the word" to those which form the basis of the third party complaint filed against him by Wendt in 1997.

The Defendant admits in his response that Hall promoted the K.D. Trinh note or securities from the Spring of 1994 to the Summer of 1995. *See* Defendant's response to Plaintiff's Motion for Summary Judgment (Doc. 17, pg. 8). Defendant also states that Hall's activity at that time relating to K.D. Trinh included: (1) appearances at seminar where he held himself out as an attorney knowledgeable in securities law; (2) representations at the seminars as to the legality of K.D. Trinh loans; (3) vouching for the legality of the notes to clients to whom he had a fiduciary duty; (4) taking loans of money from his employees, drafting brochures for use by promoters, and various other illegal and unethical activities all performed with the aim of supporting investment in K.D. Trinh loans. *See id.* at 8-11. The basis of Defendant's argument is that Hall committed a series of disconnected acts, each of which had separate and distinct consequences to different individuals (some of whom were clients and some to whom Hall owed a fiduciary duty ). This argument is without merit.

The Court can see no ambiguity when applying the language of the policy to the facts of this case. The record reveals, and the Defendant does not dispute, that Hall engaged in a series of actions all of which

8

were intended to encourage investment in K.D. Trinh. The language of the insurance policy clearly focuses on the wrongful act or acts, and not on the number of duties breached or injuries sustained. The policy states that "[a]ny claim or claims arising out of the same or related wrongful acts, shall be considered first made during the policy term in which the earliest claim arising out of such wrongful acts was made." *See* Exh. 2 to Plaintiff's Motion for Summary Judgment (Doc. 14). Furthermore, the policy defines a "claim" as "the receipt of a demand for money or services, naming you and alleging a wrongful act." *See id.*

It is undisputed that the first claim was filed during the coverage under the 1996 policy, and the policy clearly states that the earlier policy period covers subsequent claims arising from the same or related acts. A review of the record discloses that both cases were brought by investors (purchasers of the interest-bearing notes) in K.D. Trinh. The Third Amended Complaint (filed in the Cowan litigation) alleges, *inter alia,* that Hall failed to exercise due care or was reckless in not knowing that the notes offered to investors violated federal and Florida securities laws. *See* Third Amended Complaint, Exh. 7, ¶ 115 to Plaintiff's Motion for Summary Judgment (Doc. 14). The Complaint asserts causes of action against Hall, and numerous other Defendants, for violations of Florida and Federal Securities Acts, malpractice, fraud, and negligent misrepresentation. *See id.*

Similarly, the Third Party Complaint filed by Wendt against Hall asserts that Wendt and his customers relied to their detriment on Hall's legal advice that the notes did not violate federal or Florida securities laws. *See Amended Third Party Complaint,* Exh. 4 to Plaintiff's Motion for Summary Judgment (Doc. 14). The Third Party Complaint was filed after Wendt was sued for negligent misrepresentation and for various Florida law based securities violations. *See* Exh. 3.A to Plaintiff's Motion for Summary Judgment (Doc. 14).

It is clear that Hall's course of conduct encouraged investment in the K.D. Trinh's notes. Though clearly this course of conduct involved different types of acts, these acts were tied together because all were aimed at a single particular goal. The fact that these acts resulted in a number of different harms to different

persons, who may have different types of causes of action against Hall does not render the "wrongful acts" themselves to be "unrelated" for the purposes of the insurance contract. Rather, they comprised a single course of conduct designed to promote investment in K.D. Trinh. It is this same course of conduct which serves as the basis for both the Cowan and Wendt litigation. The conduct at issue in both cases was arguably the "same" and at the very least "related" in any common sense understanding of the word.

The Court thus Grants the Plaintiff's motion for summary judgment on the prayer for declaratory relief, that the insured's wrongful acts as alleged in the "Cowan litigation" are "related" to the corresponding acts involved in the "Wendt litigation" within the meaning of the policy, and Continental Casualty has paid the full aggregate amount under the policy for Hall's involvement in K.D. Trinh. Accordingly, upon due consideration, the Plaintiff's motion for summary judgment (Doc. 14) is GRANTED, and the Clerk is directed to enter judgment to that effect, terminate any remaining pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED in Ocala, Florida, this 28th day of June, 1999.